IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| STC.UNM,<br><br>    Plaintiff,<br><br>v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br><br>    Defendant. | CIVIL ACTION NO. 6:19-cv-262<br><br><br>JURY TRIAL DEMANDED |

### MOTION FOR RECONSIDERATION OF PLAINTIFF'S MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff STC.UNM ("STC.UNM") respectfully moves the Court to reconsider its Order dated June 24, 2019 and grant leave to serve the summons and complaint on foreign defendant TP-Link Technologies Co., Ltd. ("TP-Link") through its United States subsidiary in California. In the alternative, STC.UNM requests leave to conduct limited discovery as described herein. For good cause, and based on the additional facts described below, STC.UNM respectfully shows as follows.

### I. BACKGROUND AND FACTS SUPPORTING ALTERNATIVE SERVICE

Defendant TP-Link is a Chinese company that describes itself as "the [world's] No. 1 provider of WiFi devices, supplying distribution to more than 170 countries and serving billions of people worldwide." (Dkt. 4 at 2). Despite that worldwide presence, TP-Link has no offices in the United States and maintains no registered agent for service of process in the United States. (Dkt. 4 at 1). Rather, TP-Link imports, markets, and sells its products (including the Accused Instrumentalities) in the United States through its subsidiary corporation, TP-Link USA Corporation ("TP-Link USA"). TP-Link USA is a California corporation, with its principal place of business located at 145 S. State College Boulevard, Brea, California 92821. The website for the California Secretary of State identifies TP-Link USA's registered agent for service of process as Yongsheng Liu, 145 South State

College Boulevard., Suite 400, Brea, California 92821.[1]

In its Motion for Leave to Effect Alternative Service, STC.UNM requested leave to serve TP-Link through either its prior United States counsel or through TP-Link USA. (Dkt. 4). As grounds for alternative service through TP-Link USA, STC.UNM presented evidence of the following facts weighing in favor of such alternative service: 1) both TP-Link and TP-Link USA are identified by virtually identical names; 2) corporate disclosure statements filed in other cases confirm that TP-Link-USA is at least a partially-owned subsidiary of TP-Link; 3) TP-Link's CEO, Richard Xu, filed a declaration in the Eastern District of Texas confirming that TP-Link USA is TP-Link's subsidiary; and 4) both TP-Link and TP-Link USA are routinely represented in litigation by the same attorneys at the law firm of Lee Tran & Liang LLP.[2] (Dkt. 4 at 9). On June 24, 2019, the Court denied Plaintiff's Motion for Leave to Effect Alternative Service without prejudice to refiling, noting that although it had the discretion to grant leave, the facts available at that time did not support a finding that TP-Link USA is TP-Link's alter ego. (Dkt. 6).

Such a finding is supportable now. But as an initial matter, and for context, it is important to note that TP-Link has apparently gone to great lengths to avoid being served with process in the United States. Following the Court's Order, STC.UNM conducted an exhaustive search of public records to determine whether TP-Link (which imports, advertises, and sells millions of products in this country) maintains *any* attorneys, agents, or representatives in the United States. STC.UNM searched records including TP-Link's prior Federal Communications Commission ("FCC") applications and other filings, all other lawsuits in which TP-Link was named as a party, TP-Link's trademark applications, TP-Link's shipment records, administrative hearing records involving TP-Link, patent prosecutions on behalf of TP-Link, Declarations of Conformity, Uniform Commercial

---

[1] A true and correct copy of TP-Link USA's Statement of Information for the California Secretary of State (filed August 21, 2018) is attached to STC.UNM's Motion for Leave to Effect Alternative Service (Dkt. 4) as Exhibit A.
[2] STC.UNM incorporates its Motion for Leave to Effect Alternative Service (Dkt. 4) as if fully restated herein.

Code financing statements, Universal Product Code registrations, and other sources. This research revealed that TP-Link not only currently maintains no representatives in the United States for any legal or regulatory matters, but that in instances where it *did* have such representatives at one time, it has now *replaced* those representatives with individuals who are in China or otherwise beyond the reach of U.S. process.

For instance, until late 2017, the FCC required all licensed entities to maintain an agent in the United States for the purpose of receiving notice and service in relation to filing Traffic and Revenue Reports.[3] During that time, TP-Link's registered agent for service of process was an entity named American TCB, Inc.[4] Once the FCC eliminated the requirement of maintaining a U.S.-based agent, however, TP-Link quickly terminated its relationship with American TCB, Inc., and it changed its designated point of contact for the FCC to an individual in China named Jing Huang.[5]

As another example, in 2001, TP-Link filed a trademark application for the word mark "TP-Link."[6] The application was filed on TP-Link's behalf by an attorney named Yue (Robert) Xu, who practices in California[7] and whose firm lists TP-Link as one of its clients.[8] In 2012, the mark was registered to TP-Link, at its address *in China*, and listed Mr. Xu as the "attorney of record."[9] Thereafter, after the mark had been successfully registered to the Chinese entity, Mr. Xu changed the registered ownership of the trademark to a different company called "TP-Link International Limited Corporation Hong Kong," thus effectively removing TP-Link's ties to the USPTO and eliminating himself as a registered agent in the U.S. for TP-Link.[10] Mr. Xu made the same ownership

---

[3] *See* https://transition.fcc.gov/Daily_Releases/Daily_Business/2017/db1024/FCC-17-136A1.pdf (last visited October 21, 2019). This Report and Order eliminated the aforementioned requirement.
[4] *See* https://fccid.io/TE7 (last visited October 21, 2019).
[5] *See* Exhibit A.
[6] *See* Exhibit B.
[7] *See* http://www.apex-attorneys.com/en/bio_xu.htm (last visited October 22, 2019).
[8] *See* http://www.apex-attorneys.com/en/clients.htm (last visited October 22, 2019) (identifying "TP-Link International Limited" as a client).
[9] *See* Exhibit B.
[10] *See id.*

MOTION FOR RECONSIDERATION OF PLAINTIFF'S
MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE                                             PAGE 3

change for several other TP-Link trademarks.[11]

TP-Link's efforts to insulate itself in China only serve to highlight the fact that its only presence in the U.S. is by virtue of its subsidiary—TP-Link USA—through which its products (including the Accused Instrumentalities) are sold within the U.S. on a massive scale. In addition to the facts recounted in its prior Motion for Leave to Effect Alternative Service, STC.UNM has now uncovered additional evidence demonstrating that TP-Link and TP-Link USA are intertwined to an extent that would support an alter ego finding. As cited in STC.UNM's prior motion, Richard Xu (who claimed to be the CEO of TP-Link USA in 2013) represented to the Eastern District of Texas that TP-Link USA was TP-Link's subsidiary.[12] (Dkt. 4 at 2). But Mr. Xu has also made the following additional admissions about the relationship between TP-Link USA and its Chinese parent company:

- TP-Link USA was established by TP-Link.[13]

- Before TP-Link USA was formed, TP-Link was focused on "establish[ing] a beachhead in the US market," whereas "most Chinese companies [were] more focused on engineering rather than marketing."[14]

- TP-Link funded TP-Link USA, and because TP-Link USA had "the backing of a global company's [i.e., TP-Link's] R&D," TP-Link USA was given the "latitude to experiment with new marketing strategies" geared toward penetrating the U.S. market.[15]

- At the time TP-Link USA was formed, Mr. Xu was a Vice President of TP-Link in China, and he "went to the United States alone in 2009," formed TP-Link USA, recruited and trained its personnel, formed customer relationships, and established TP-Link's U.S. distribution network.[16]

- After TP-Link USA was formed, Mr. Xu served in dual executive roles as Vice President

---

[11] *See ,e.g.,* Exhibit C; Exhibit D.
[12] It should be noted that to be a "subsidiary," the parent company must own more than 50% voting stock of the company; if the parent company owns 50% or less, then the company is termed an "affiliate" company, not a "subsidiary." *See Symons Int'l Group, Inc. v. Cont'l Cas. Co.*, 101CV00799RLYMJD, 2017 WL 4269880, at *4 (S.D. Ind. Sept. 26, 2017) (citing THE LAW DICTIONARY, http://thelawdictionary.org/subsidiary/).
[13] *See* http://www.businessinterviews.com/Richard-Xu-TP-Link (last visited October 21, 2019).
[14] *See id.*
[15] *See id.*
[16] *See* https://www.linkedin.com/in/richard-xu-5042a954/ (last visited October 21, 2019).

- of TP-Link and Vice President (and later CEO, according to his declaration) of TP-Link USA.[17]

- TP-Link USA's supply chain is "vertical[ly][ integrat[ed]" with TP-Link—whereas its "largest competitors outsource manufacturing to third party contractors," TP-Link manufactures the products that TP-Link USA markets and sells.[18]

These are not the only facts that tilt the scale toward a finding that TP-Link USA is TP-Link's United States alter ego. In addition to sharing the same Vice President until at least 2014, there are other examples of management overlap between the two companies. For example, TP-Link was founded in China by two brothers, one of whom is named Zhao Jianjun.[19] According to a Statement of Information filed with the California Secretary of State on December 26, 2017, and confirmed as unchanged on August 21, 2018, "Jianjun Zhao" is currently the *Director of TP-Link USA*.[20] Mr. Zhao also serves as the CEO and Director of a company called Jeffrey & Hillary USA Corporation ("Jeffrey & Hillary"), which shares the same office address as TP-Link USA.[21] Jeffrey & Hillary's CFO, Deyi Shu, also serves as the CFO of TP-Link USA.[22] Not surprisingly, Jianjun Zhao (the co-founder of TP-Link) is also the Director of another company called Jeffrey&Hillary UK Ltd.[23] And it is not a large inferential leap to conclude that the "Jeffrey" of Jeffrey & Hillary refers to none other than TP-Link's chairman and other founding brother—Jeffrey Chao (a.k.a. Zhao Jiaxing).[24]

The tangled web of management within these companies demonstrates that they are not separate and distinct entities having nothing to do with each other. Rather, they are arms of one unit that has overlapping management, common ownership, and a unified business strategy in which TP-Link

---

[17] *See id.*
[18] *See* http://www.businessinterviews.com/Richard-Xu-TP-Link (last visited October 21, 2019).
[19] *See* http://usa.chinadaily.com.cn/epaper/2013-04/05/content_16377527.htm (last visited October 21, 2019).
[20] *See* Exhibit E; Exhibit F.
[21] *See* Exhibit G.
[22] *See id.*
[23] *See* https://beta.companieshouse.gov.uk/company/08266092/officers (last visited October 21, 2019).
[24]  *See*  https://www.bizjournals.com/sanjose/news/2016/01/19/chinese-tech-entrepreneur-buys-huge-santa-clara.html (last visited October 21, 2019); http://research.omicsgroup.org/index.php/TP-Link (last visited October 22, 2019) ("Jeffrey Chao" appears to be the American spelling of "Zhao Jiaxing").

manufacturers products to be marketed and sold in the U.S. by TP-Link USA.

## II. <u>ARGUMENT</u>

As stated in STC.UNM's prior Motion for Leave, currently available information suggests that formal service of a defendant in China through the Hague Service Convention can take as long as *two years*. (Dkt. 4 at 4). Accordingly, in order to avoid the undue time, burden, and expense associated with Hague service in China, STC.UNM has appealed to this Court's broad discretion in allowing service by "other means" pursuant to Federal Rule of Civil Procedure 4(f)(3). Based upon the facts described in STC.UNM's prior Motion, as well as the additional facts detailed herein, STC.UNM submits that more than sufficient evidence has now been presented to warrant service on TP-Link through its U.S. subsidiary, TP-Link USA.

Solely in the alternative, and if the Court does not find the facts sufficient to allow service through TP-Link USA, STC.UNM requests that the Court allow it to conduct limited discovery consisting of document requests and a deposition of TP-Link USA's corporate representative(s) in order to adduce further evidence to establish its relationship with TP-Link. If the Court allows this discovery, and in the interest of time, STC.UNM will proceed in parallel with service of process via the Hague Service Convention as discovery is conducted.

### A. Serving TP-Link through TP-Link USA Comports with Due Process.

To comport with due process, the method of service crafted by the Court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[25] Due Process "does not require that the individuals served on behalf of foreign defendants … [be] authorized to accept on their behalf."[26] Rather, "[t]he means employed must be such as one desirous of actually informing the

---

[25] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).
[26] *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565-66 (C.D. Cal. 2012) (finding unserved officers' and directors' "close connection" with the corporation make it "all but certain" that directors served through counsel "will receive notice of the suit").

absentee. … The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."[27] As described in STC.UNM's prior Motion for Leave, numerous courts (including the Western District of Texas) have allowed alternative service of foreign defendants to be accomplished via service upon a U.S. subsidiary or affiliated company.[28]

As this Court pointed out in its prior Order, "process can be served on a foreign corporation by serving its domestic subsidiary" when "a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one."[29] Thus, Courts should look to "the totality of the circumstances in which the instrumentalities function" in determining whether a subsidiary is an alter ego of the parent entity. *Berry v. Lee*, 428 F. Supp. 2d 546, 554 (N.D. Tex. 2006) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003)).

In its prior Order, the Court further noted that the following factors weigh in favor of treating two companies as essentially one:

> [1] The companies share common business names, business departments, offices, directors or officers, employees, stock ownership, financing, and accounting. [2] One corporation pays wages to the other corporation's employees. [3] The employees of one corporation render services on behalf the other corporation.

*Fundamental Innovation Sys. Int'l, LLC*, 2018 WL 3330022, at *3 (citing *Berry*, 428 F. Supp. 2d at 554); *see Miles v. American Telephone & Telegraph Co.*, 703 F.2d 193, 195 (5th Cir. 1983). Conversely, the following factors can weigh against treating two companies as essentially one:

> [1] The daily operations of the corporations are separate. [2] Formal barriers exist between the management of the respective companies. [3] Parties with whom the corporations come into contact are apprised of the companies' separate identities. [4] The companies keep separate books and accounts. [5] The companies file separate tax returns.

---

[27] *Mulane*, 339 U.S. at 315.
[28] *See* Dkt. 4 at 5 (citations omitted); *See also Affinity Labs of Tex., LLC v. Nissan N. Am., Inc.*, No. 6:13-CV-369-WSS, 2014 WL 11342502, at *2 (W.D. Tex. Jul. 2, 2014) (Smith, J.) (allowing service upon U.S. subsidiary because it had a similar name as the defendant, a corporate disclosure statement identified it as a subsidiary, and the same lawyers routinely represented both entities).
[29] *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 570 (5th Cir. 2007).

*Fundamental Innovation Sys. Int'l, LLC*, 2018 WL 3330022, at *3 (citing *Berry*, 428 F. Supp. 2d at 554). The ultimate issue is "one of control." *Id.*

Here, the totality of circumstances supports a finding that service upon TP-Link USA would be reasonably certain to inform TP-Link of the action against it. As already established in STC.UNM's prior Motion for Leave, the companies share common business names, TP-Link USA has acknowledged common ownership and admitted that it is TP-Link's subsidiary, and the companies are routinely represented by the same attorneys. (Dkt. 4 at 9). The additional evidence set forth above further establishes the tight integration of the U.S. subsidiary with its Chinese parent. Richard Xu, an executive of TP-Link, was sent to the U.S. from China to establish a market for TP-Link's products and to create TP-Link USA, and he served as an executive officer of **both** companies thereafter.[30] Additionally, one of TP-Link's founders, Zhao Jianjun, is currently the **Director of TP-Link USA**.[31] And Mr. Jianjun, along with TP-Link USA's CFO, is currently an executive of a different company ("Jeffrey & Hillary") that shares office space with TP-Link USA and bears the name of TP-Link's other founding member, Jeffrey Chao.[32]

Additionally, TP-Link and TP-Link USA do not acknowledge formal barriers between the two companies, and they hold themselves out to the public as one business unit. According to Mr. Xu, the two companies are "vertically integrated"—all research, development, and manufacturing is conducted by TP-Link in China, and TP-Link USA is solely focused on the marketing and distribution of those products in the U.S.[33] TP-Link's website draws no distinctions whatsoever between the two entities, describing them **singularly** as "a global **provider** of reliable networking devices" and "the **No. 1 provider** of WiFi devices" in the world.[34] The website also lists email

---

[30] *See* https://www.linkedin.com/in/richard-xu-5042a954/ (last visited October 21, 2019).
[31] *See* Exhibit E.
[32] *See* Exhibit G.
[33] *See* http://www.businessinterviews.com/Richard-Xu-TP-Link (last visited October 21, 2019).
[34] *See* https://www.tp-link.com/us/about-us/corporate-profile/ (last visited October 22, 2019) (emphasis added).

addresses for sales and customer support at "tp-link.com," which does not differentiate between the Chinese and U.S. entities, and the website identifies the company's address as being in California, not China.[35]

Based on the foregoing, if TP-Link USA is served with process, it will undoubtedly ensure that notice of this action is provided to TP-Link. The requirements of due process will be satisfied.[36]

### B.  IN THE ALTERNATIVE, STC.UNM REQUESTS LEAVE TO CONDUCT LIMITED DISCOVERY.

If the Court does not find the above facts sufficient to warrant alternative service, STC.UNM requests leave to conduct limited discovery in order to adduce more evidence of the relationship between TP-Link and TP-Link USA. Generally, "[a] district court has 'broad discretion in all discovery matters', and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.'"[37] Courts in this District have permitted limited discovery when a plaintiff has "presented adequate factual allegations to support" further discovery as to whether an alter ego relationship exists.[38]

The question of whether a company can be deemed an agent of another entity is necessarily a fact-intensive inquiry. Here, TP-Link USA is a privately-owned company, and STC.UNM believes that it has pieced together enough detail from publicly available sources about TP-Link USA's relationship with its parent to support alternative service on that company. If the Court disagrees, however, STC.UNM respectfully requests that it be permitted to direct limited discovery to TP-Link USA (namely document requests and a corporate representative deposition notice) in order to gather

---

[35] *See* https://www.tp-link.com/us/about-us/contact/ (last visited October 22, 2019).
[36] STC.UNM submits that certain factors for determining whether one entity may be deemed the agent of another—such as whether they keep separate books and accounts and file separate tax returns—are not probative here. TP-Link and TP-Link USA are obligated to separately comply with the tax laws of China and the U.S., respectively.
[37] *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)).
[38] *Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015) (allowing limited jurisdictional discovery to determine whether entity was the alter ego of an individual).

additional evidence to support alternative service through that entity.

If the Court allows this discovery as requested, STC.UNM will nevertheless, in the interest of time, proceed with service pursuant to the Hague Service Convention in parallel with such discovery.

### III. CONCLUSION

For the foregoing reasons, STC.UNM respectfully asks the Court to reconsider and grant STC.UNM's motion and enter an order approving alternative service of process on TP-Link through its subsidiary, TP-Link USA, as proper under Rule 4(f)(3) and (h)(2). In the alternative, STC.UNM requests leave to serve limited discovery, including document requests and a corporate representative deposition notice, on TP-Link USA.

Dated: October 23, 2019                       Respectfully submitted,

By:  /s/ *William D. Ellerman*
Charles L. Ainsworth (Texas 00783521)
Robert Christopher Bunt (Texas 00787165)
PARKER, BUNT & AINSWORTH, P.C.
1000 East Ferguson, Suite 418
Tyler, TX 75702
Tel: (903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Michael W. Shore (Texas 18294915)
Alfonso G. Chan (Texas 24012408)
William D. Ellerman (Texas 24007151)
SHORE CHAN DEPUMPO LLP
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorechan.com
achan@shorechan.com
wellerman@shorechan.com

**COUNSEL FOR PLAINTIFF STC.UNM**