**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| STC.UNM, | § | |
| *Plaintiff* | § | |
| | § | **W-19-CV-00262-ADA** |
| -v- | § | |
| | § | |
| | § | |
| TP-LINK TECHNOLOGIES CO., | § | |
| LTD., | § | |
| *Defendant* | § | |

**ORDER REGARDING MOTION FOR RECONSIDERATION OF
PLAINTIFF'S MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE**

Before the Court is Plaintiff STC.UNM's motion for reconsideration of its motion for leave to effect alternative service, which was filed on October 23, 2019. ECF No. 7. STC.UNM filed its original motion for leave to effect alternative service on May 29, 2019. ECF No. 4. In its original motion, STC.UNM requested serving Defendant TP-Link Technologies' ("TP-Link") domestic subsidiary, TP-Link USA Corporation ("TP-Link USA"). *Id.* at 6. STC.UNM alternatively requested serving California-based attorneys Enoch H. Liang and Heather F. Auyang, who have represented both companies in past legal actions. *Id.* The Court denied that motion without prejudice on June 24, 2019. ECF No. 6. In that order, the Court granted STC.UNM permission to file "another motion for alternative service should it obtain additional evidence about the relationships between TP-Link and TP-Link USA or Defendant and attorneys Enoch H. Liang and Heather F. Auyang." *Id.* at 8.

In the present motion, STC.UNM renews its request to serve TP-Link's domestic subsidiary. ECF No. 7 at 7. STC.UNM also requests, in the alternative, leave to conduct limited discovery in order to determine the relationship between TP-Link and its domestic subsidiary. *Id.*

For the reasons described herein, the Court **DENIES** STC.UNM's motion for leave to effect alternative service by serving TP-Link's domestic subsidiary, TP-Link USA, but **GRANTS** STC.UNM leave for limited discovery to determine the relationship between TP-Link and TP-Link USA.

## I.    Background

STC.UNM is a research park corporation owned by the Board of Regents of the University of New Mexico. ECF No. 1 at ¶ 1.  STC.UNM alleges that TP-Link manufactures, imports, and sells a number of infringing products in the United States, namely wireless communications equipment and wireless routers.  *Id.* at ¶ 13.  TP-Link is a Chinese company, with its principal place of business located in Shenzhen, China.  *Id.* at ¶ 9.  TP-Link does not have any offices in the United States, nor does it have an agent appointed to receive service here. ECF No. 4 at 2.

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 4(f), service on a foreign defendant must comply with one of three provisions.  Rule 4(f)(1) states that service may be made by any means specified by any international agreement, such as the Hague Convention.  Rule 4(f)(2), which is not presently at issue, provides several methods of service to an individual in a country when there is no applicable international agreement.  Rule 4(f)(3) states that a foreign individual may be served "by other means not prohibited by international agreement, as the court orders."  "[A] plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)." *Affinity Labs of Texas, LLC v. Nissan N. Am. Inc.*, No. WA:13-cv-369, 2014 WL 11342502, at *1 (W.D. Tex. July 2, 2014); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015

(9th Cir. 2002) ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).").

The International Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Convention), is an international treaty governing the service abroad of foreign defendants. 20 U.S.T. 362, T.I.A.S. 6638, Art. 1. Direct "service pursuant to Hague Convention procedures is required only if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 537 (5th Cir. 1990); *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service."). The method of serving process is governed by the long-arm statute of the forum state. *Schlunk*, 486 U.S. at 706. Therefore, if the statute does not require the transmittal of documents abroad, a defendant's domestic agent may be served pursuant to Rule 4(f)(3). *Id.*

Finally, "[d]eterminations regarding alternate service under Federal Rule of Civil Procedure 4(f)(3) are conferred to the discretion of the Court, since 'the plain language of the rule stipulates that a district court 'may' direct alternative means of service.'" *James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. SA-16-CV-00463-OLG, 2018 WL 4688778, at *3 (W.D. Tex. July 5, 2018) (quoting *Prewitt Enter., Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 921 (11th Cir. 2003)). In addition to the requirement that alternate service be permissible under any applicable international agreements and the Federal Rules, it must also satisfy due process. *See Rio Props.*, 284 F.3d at 1016–17 ("Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process."). To meet this requirement, the method of service

approved by the district court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Rio Props.*, 284 F.3d at 1016–17.

The Texas long-arm statute does not require the transmittal of documents abroad when serving a foreign defendant and it also "reach[es] as far as the federal constitutional requirements of due process will allow." *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV01827-N, 2018 WL 3330022, at *3 n.3 (N.D. Tex. Mar. 16, 2018) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)).  Therefore, service under Rule 4(f)(1) is not required, and the Court has discretion to allow service under Rule 4(f)(3).  This Court previously held that seeking to avoid unnecessary delay and expense in serving a foreign defendant through the Hague Convention is a valid reason to grant alternative service. *Affinity Labs of Texas, LLC*, 2014 WL 11342502, at *4. Accordingly, the Court may grant leave to effect alternative service under Rule 4(f)(3) by any method that satisfies due process.

The Fifth Circuit has recognized that "even if a domestic subsidiary is not explicitly authorized by its foreign parent corporation as an agent for service, the subsidiary might still be capable of receiving such service." *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 570 (5th Cir. 2007).  "[A]s long as a foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one, process can be served on a foreign corporation by serving its domestic subsidiary—without sending documents abroad." *Id.* (quoting *Sheets*, 891 F.2d at 536) (emphasis added).  In other words, the subsidiary must be the alter ego of the parent. *Paradigm Entm't, Inc. v. Video Sys. Co., Ltd.*, No. 99-CV-2004, 2000 WL 251731, at *3 (N.D. Tex. Mar. 3, 2000).

In determining whether a subsidiary is the alter ego of its parent, courts examine "the totality of the circumstances in which the instrumentalities function." *Berry v. Lee*, 428 F. Supp. 2d 546, 554 (N.D. Tex. 2006) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003)). Courts begin with the presumption that two companies are separate from each other. *See Miles v. American Telephone & Telegraph Co.*, 703 F.2d 193, 195 (5th Cir. 1983) ("Texas courts are loathe to merge the separate legal identities of parent and subsidiary unless the latter exists as a mere tool or 'front' for the parent, or the corporate fiction is utilized to achieve an inequitable result, or to conceal fraud or illegality."). Courts are more likely to conclude that the entities are distinct where factors such as the following exist:

> [1] The daily operations of the corporations are separate. [2] Formal barriers exist between the management of the respective companies. [3] Parties with whom the corporations come into contact are apprised of the companies' separate identities. [4] The companies keep separate books and accounts [5] The companies file separate tax returns.

*Fundamental Innovation Sys. Int'l, LLC*, 2018 WL 3330022, at \*3 (citing *Berry*, 428 F. Supp. 2d at 554). Alternatively, courts are more likely to conclude that the companies are a single entity where the following factors exist:

> [1] The companies share common business names, business departments, offices, directors or officers, employees, stock ownership, financing, and accounting. [2] One corporation pays wages to the other corporation's employees. [3] The employees of one corporation render services on behalf the other corporation.

*Id.* "No single factor is determinative, and the ultimate question is one of control." *Id.* (citing *Bridas*, 345 F.3d at 359). Indeed, the Fifth Circuit has "noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (citing *Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir. 1978)).

### III.    Discussion

STC.UNM contends that the "totality of the circumstances supports a finding that service upon TP-Link USA would be reasonably certain to inform TP-Link of the action against it." ECF No. 7 at 8.  STC.UNM specifically points to the following facts:

1. TP-Link and TP-Link USA share a common business name.
2. TP-Link USA has "acknowledged common ownership and admitted that it is TP-Link's subsidiary."
3. The same attorneys "routinely" represent both companies.
4. TP-Link sent one of its executives, Richard Xu, to the U.S. to establish a market for TP-Link's products and to create TP-Link USA.
5. Richard Xu served as an executive officer of both TP-Link and TP-Link USA.
6. One of TP-Link's founders, Zhao Jianjun, is currently the director of TP-Link USA.
7. Zhao Jianjun and TP-Link USA's CFO are both executives of another company, Jeffrey & Hillary, which shares office space with TP-Link USA.
8. TP-Link and TP-Link USA are allegedly vertically integrated where the former focuses on research, development, and manufacturing while the latter focuses solely on marketing and distributing those products within the United States.
9. TP-Link's website does not draw a distinction between the two.
10. The email addresses for TP-Link USA's sales and customer support have a "tp-link.com" email addresses, which is the ostensibly the parent company's email address.

*Id.*

The Court has reviewed above facts and most[1] of them appear to generally support STC.UNM's contention TP-Link USA is the alter ego of TP-Link.  In particular, the Court finds that the tenth fact—namely that the email addresses for TP-Link USA's sales is sales.usa@tp-link.com and TP-Link USA's technical support is Support.USA@tp-link.com—is particularly

---

[1] The seventh and eighth facts do not appear to support (nor do they undermine) STC.UNM's contention.  First, the Court does not understand how the seventh fact supports STC.UNM's contention that TP-Link controls TP-Link USA or that TP-Link USA is the alter ego of TP-Link.  Rather, the seventh fact appears to pertain more to a potential relationship between TP-Link USA and a third company, Jeffrey & Hillary, than pertaining to the relationship between TP-Link and TP-Link USA.  Second, STC.UNM's eighth fact appears to the overstate what Richard Xu meant by "vertical integration."  Mr. Xu's description of vertical integration describes integrating manufacturing along with research and development (in contrast with its competitors who outsource their manufacturing to third-party manufacturers) and not necessarily integrating TP-Link's research and development, manufacturing,    etc.    and    TP-Link    USA's    marketing,    distribution,    *etc.    See* http://www.businessinterviews.com/Richard-Xu-TP-Link  (last visited December 31, 2019).

persuasive.  *See* https://www.tp-link.com/us/about-us/contact/ (last visited January 1, 2020).  In other words, both the sales and support email addresses for TP-Link USA appear to be TP-Link email addresses, but with U.S.-specific usernames.

On the other hand, as noted in the Court's previous order, Mr. Xu's declaration in the Eastern District of Texas case explicitly recites that "TP-LINK Tech does not control the day-to-day management of TP-LINK USA.  TP-LINK USA is its own independent business and makes its own corporate decisions."  ECF No. 6 at 6 (citing ECF No. 4, Ex. D at 18-19.).  In the Court's previous order, the Court found that "[w]ithout more, Plaintiff fails to show that Defendant exerts the kind of control over its subsidiary necessary to establish an alter ego status."  *Id.*

Weighing the above facts against the statements in Mr. Xu's declaration for the Eastern District of Texas case, the Court finds that STC.UNM has now provided sufficient facts for at least a *prima facie* case that TP-Link exerts the kind of control over its subsidiary necessary to establish an alter ego status.  However, because there are no facts in the record that directly rebut the statements from Mr. Xu's declaration, the Court declines to grant leave to effect alternative service.  But because Mr. Xu's declaration was not subject to cross-examination and because cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth,"[2] the Court **GRANTS** leave for STC.UNM to serve limited discovery, including document requests and at least one corporate deposition notice, on TP-Link USA.

---

[2] 3 Wigmore, Evidence §1367, p. 27 (2d ed. 1923).

**SIGNED** this 1st day of January, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE