**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| UNM RAINFOREST INNOVATIONS, | |
| Plaintiff, | Civil Action No. 6:19-cv-00262-ADA |
| v. | **JURY TRIAL DEMANDED** |
| TP-LINK TECHNOLOGIES CO., LTD., | |
| Defendant. | |

**DEFENDANT'S OPPOSED MOTION UNDER 28 U.S.C. 1404(a) TO TRANSFER THE
<u>ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA</u>**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...............................................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................................2

    A.   Defendant TP-Link Tech Has No Connection to the WDTX................................2

    B.   Non-Party TP-Link USA Is Located in the CDCA ..............................................3

    C.   Plaintiff Rainforest Has No Connection to Texas and Had No Role in
        the Creation of the Patented Inventions ...............................................................3

    D.   Third Party ITRI International is in California.....................................................6

    E.   Third-Party Intel is in California.........................................................................6

    F.   Third-Party Qualcomm is in California ...............................................................7

    G.   Third-Party Apple is in California .......................................................................7

    H.   Third Party LG Electronics MobileComm is in California ..................................7

III. LEGAL STANDARDS .....................................................................................................8

IV.  THIS CASE SHOULD BE TRANSFERRED TO THE CDCA .......................................9

    A.   This Action Could Have Been Brought in the CDCA..........................................9

    B.   The CDCA Is Clearly More Convenient Than the WDTX ................................10

        1.   The Cost of Attendance of Willing Witnesses Favors Transfer ..............10

        2.   The Relative Ease of Access to Source of Proof Favors Transfer...........11

        3.   The Availability of Compulsory Process Favors Transfer ......................12

        4.   The Local Interest Favors Transfer.........................................................13

        5.   Court Congestion Slightly Favors Transfer or Is at Worst
            Neutral......................................................................................................14

        6.   The "Other Practical Problems" Factor Favors Transfer.........................14

        7.   All Remaining Factors Are Neutral .........................................................15

V.   CONCLUSION................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-cv-00180-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ................11, 12, 13

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) .........................................................................................9

*Allergan, Inc. v. Teva Pharms. USA, Inc.*,
No. 2:15-CV-1455-WCB, 2017 WL 4619790 (E.D. Tex. Oct. 16, 2017) .............................5

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) .................................................................................8, 11

*In re Apple, Inc.*,
581 Fed. App'x 886 (Fed. Cir. 2014) .............................................................................12

*Data-Scape, Ltd. v. Dell Techs., Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ...........................12

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ..........................12

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ...............................................................................10, 12

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) .......................................................................................14

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) .................................................14

*Regents of the Univ. of Minnesota v. LSI Corp.*,
926 F.3d 1327 (Fed. Cir. 2019) .........................................................................................6

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*,
896 F.3d 1322 (Fed. Cir. 2018) .........................................................................................5

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) .....................................................................................2, 14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017) .....................................................................................................2

*Uniloc USA, Inc. v. Apple Inc.*,
   No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017)............9, 10, 11, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ................................................................................8, 9, 10, 11

**Statutes**

28 U.S.C. §1400(b) .............................................................................................................2

28 U.S.C. § 1404(a) .....................................................................................................1, 8, 10

35 U.S.C.§ 287(a), and (iii)..................................................................................................6

**Other Authorities**

Rule 4(f)(3) ........................................................................................................................3

Rule 45 (c)(1)(B).................................................................................................................13

## I.   INTRODUCTION

Defendant TP-Link Technologies Co., Ltd. ("TP-Link Tech") has moved to dismiss for lack of personal jurisdiction and insufficient service of process.  Dkts. 45, 46.  Those motions are pending.  Without waiving any jurisdictional or other defenses, TP-Link Tech hereby also respectfully moves under 28 U.S.C. § 1404(a) to transfer this action to the Central District of California ("CDCA").[1]

No party to this litigation has any connection to the Western District of Texas.  For its part, Plaintiff UNM Rainforest Innovations ("Rainforest") is based in Albuquerque, New Mexico and conducts no business in the Western District of Texas ("WDTX") or elsewhere in Texas. Rainforest and the University of New Mexico ("UNM") also had no role in the inventive activity giving rise to the asserted patents.  Rainforest acquired the patents from a defunct company in Taiwan shortly before filing the Complaint—a transaction that has been challenged as illegitimate by the original patentee.  *See* Ex. 1 (Declaration of Peng-Yu Wang).[2]

TP-Link Tech also has no presence in Texas or the United States.  Rainforest effectively recognizes this, as it alleges jurisdiction based on the purported activities of unidentified *non-party* "intermediaries" that purportedly import and sell the accused products in the United States while allegedly acting in concert with TP-Link Tech.  Dkt. 1 ("Cmplt.") at ¶ 13.  But, the non-party company that is *solely* responsible for importing, marketing, advertising, offering to sell, and selling "TP-Link branded" products in the United States—TP-Link USA Corporation ("TP-Link USA")—is headquartered in the CDCA and has no place of business in this forum.  Rainforest did

---

[1] TP-Link Tech preserves its jurisdictional defenses and makes this motion in the alternative.

[2] Exhibits are attached to the Declaration of Edward J. Mayle.

not sue TP-Link USA because venue in the WDTX would be manifestly improper.  *See* 28 U.S.C. §1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

Rainforest's filing of this case in the WDTX is a textbook case of attempted venue manipulation.  This Court should not endorse such "efforts to manipulate venue," and should either grant the pending motions to dismiss or transfer the case to the CDCA where it clearly belongs. *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021) ("[W]e are not bound by a plaintiff's efforts to manipulate venue.").

What is more, numerous third parties have relevant witnesses and evidence in the CDCA or elsewhere in California and, hence, are within the CDCA's subpoena power.  These third parties include companies that have licensed the asserted patents and/or have evidence relating to damages and patent validity.  These include Intel, Qualcomm, Apple, LG Electronics MobileComm, and the U.S. subsidiary of the original Taiwanese owner of the asserted patents.  The concentration of relevant third parties within the CDCA's subpoena power weighs strongly in favor of transfer.

In short, the WDTX has no legitimate interest in this case. With *none* of the parties having any material connection to the WDTX; with non-party TP-Link USA of the CDCA being the central figure in Rainforest's jurisdictional and infringement theories; and with numerous relevant third parties being subject to the CDCA's subpoena power, it clearly would be more convenient to litigate in the CDCA.  The Court therefore should transfer venue.

## II.   FACTUAL BACKGROUND

### A.   Defendant TP-Link Tech Has No Connection to the WDTX

TP-Link Tech is a privately held corporation organized under the laws of China, with its headquarters and principal place of business in Shenzhen, China.  Declaration of Yanmei Zhang ("Zhang Decl.") at ¶ 2.  TP-Link Tech does not have any employees or agents in Texas.  *Id*. at ¶ 3. Nor does it own, lease, or operate any offices or other facilities in Texas.  *Id*.  TP-Link Tech does

2

not design, manufacture, sell, or offer to sell any products in Texas.  *Id*. TP-Link Tech does not ship products to Texas, and it does not conduct any marketing or advertising in, or directed toward, Texas.  *Id*.

### B.    Non-Party TP-Link USA Is Located in the CDCA

In the Complaint, Rainforest accuses non-party "intermediaries" of importing and selling the accused products in the United States.  *See* Cmplt. at ¶ 13.  And in its motion for leave to effect alternative service under Rule 4(f)(3), Rainforest alleges that TP-Link USA—and not TP-Link Tech—sells the accused products in the United States.  *See* Dkt. 4 at 2.  But TP-Link USA, a California corporation with its headquarters and principal place of business in the CDCA at Irvine, CA, is *solely* responsible for importing, marketing, advertising, offering to sell, and selling "TP-Link branded" products in the United States, including the accused products in this case.  Zhang Decl. at ¶ 4.  Contrary to Rainforest's speculation, TP-Link USA is a wholly owned subsidiary of non-party TP-Link UK, Ltd., and not a subsidiary (either directly or indirectly) of Defendant TP-Link Tech.  *Id*.  TP-Link Tech does not direct or control the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States.  *Id*.  As such, per Rainforest's own jurisdictional and infringement allegations, TP-Link USA has the most relevant witnesses to this case.  There is nothing to suggest that there is any physical, geographical location from which TP-Link USA carries out business other than the CDCA.

### C.    Plaintiff Rainforest Has No Connection to Texas and Had No Role in the Creation of the Patented Inventions

Rainforest is a New Mexico corporation based in Albuquerque, New Mexico that is allegedly "owned, and controlled entirely by the Board of the Regents of the University of New Mexico ('UNM')."  Cmplt. at ¶¶ 1, 2.  It does not have any known employees or buildings in this

District.   Rainforest purports to license and enforce "its inventions" to further research and development at UNM.  *Id*. at ¶ 5.  But this case does not involve "*its* inventions."  Instead, Rainforest asserts three patents that were originally owned by Industrial Technology Research Institute ("ITRI") of Taiwan.  Cmplt. at ¶¶ 19-21, 26-28, 33-35; Ex. 2 (assignment to ITRI).  All of the inventors appear to be Taiwanese nationals.  In March of 2018, ITRI may have assigned the patents to Sino Matrix Technology, Inc. ("Sino") a Taiwan entity that was possibly related to ITRI.  Ex. 3 (assignment to Sino).  Chi-Ping Chang signed the document as President of Sino.  *Id*.  On information and belief, Mr. Chang was a department manager in Digital Electrical Design with ITRI's Electronics Research Service Organization, which purportedly helped engineers become "technopreneurs."[3]  A few months later, Rainforest purportedly acquired the patents from Sino and then filed suit.  Ex. 4 (assignment to Rainforest).  There are several serious questions, however, about the validity of the chain of title of the asserted patents in this case.

First, ITRI's General Counsel, Peng-Yu Wang, has submitted a sworn declaration in another pending litigation referencing an "Original Assignment" that apparently was not recorded with the USPTO or described in the Complaint.  Ex. 1 (WDTX Case No. 6:20-cv-000522-ADA, Dkt. 45-1) at ¶¶ 8-11.  Only the redacted version is publicly available.  According to Mr. Wang, an employee of ITRI that did not have authority to enter into an agreement on behalf of ITRI to modify agreements with Sino, executed certain assignment forms.  *Id.* at ¶¶ 12-13.  "ITRI did not intend to convey, did not convey, and could not convey without obtaining authorization from its supervising government entities, any rights in the patents-in-suit[.]"  *Id*. at ¶ 14; *see also id*. at ¶¶ 15-17.  According to Mr. Wang, the Judge in Taiwan Hsinchu District Court "issued an injunction

---

[3]   *See*   https://www.mondaq.com/unitedstates/patent/960046/stcunm-sues-zyxel-as-apple-asks-federal-circuit-to-reverse-judge-albright39s-refusal-to-transfer (last accessed 8/25/2022).

to refrain Sino Matrix and UNM Rainforest Innovations from making any disposition of the subject patents" under Taiwan law. *Id*. at ¶ 24.

Second, the assignment from Sino states that it transferred the patents to Rainforest in consideration of only "Ten Dollars (US$10)"—plus "other" unspecified "good and valuable consideration." Ex. 4 (at page Frame: 0175). At that time, Rainforest's counsel of record in this case was championing a scheme wherein Native American tribes and public universities would effectively "rent" out their sovereign immunity to private companies to shield patents from the USPTO's review in *inter partes* reexaminations. "By Shore's calculation, transferring a patent from a non-sovereign entity to a sovereign one would increase its value anywhere from four to ten times over. If he could broker such deals, everybody—patent owners, sovereign entities, and Shore himself—could make millions." "Why is Allergan Partnering With the St. Regis Mohawk Tribe?," *the New Yorker*, Nov. 13, 2017.[4] Federal Circuit Judge Bryson voiced "serious concerns about the legitimacy of the tactic." *Allergan, Inc. v. Teva Pharms. USA, Inc*., No. 2:15-CV-1455-WCB, 2017 WL 4619790, at *2 (E.D. Tex. Oct. 16, 2017).

The chain of assignments that ultimately gave Rainforest purported ownership of the patents here likely constituted such sovereign-immunity-renting "tactic." Indeed, the Complaint here states that Rainforest "does not waive … its sovereign immunity … to any *inter partes* review, *ex parte* reexamination, or other post-grant proceeding at the United States Patent and Trademark Office." Cmplt. at ¶ 8. The Federal Circuit ultimately rejected Mr. Shore's scheme as with respect to Native American Tribes, while leaving "for another day the question of whether there is any reason to treat state sovereign immunity differently." *Saint Regis Mohawk Tribe v. Mylan Pharms.*

---

[4] Available at https://www.newyorker.com/magazine/2017/11/20/why-is-allergan-partnering-with-the-st-regis-mohawk-tribe (last accessed 8/25/2022).

*Inc.*, 896 F.3d 1322, 1329 (Fed. Cir. 2018).  Then, shortly after Rainforest filed suit here, the Federal Circuit rejected the tactic as applied to public universities.  *See Regents of the Univ. of Minnesota v. LSI Corp.*, 926 F.3d 1327, 1341 (Fed. Cir. 2019).  Notably, Rainforest (f/k/a STC.UNM), represented by Mr. Shore, filed an amicus brief there, arguing that IPRs were created to deal with "patent trolls" but the policy arguments made in favor of IPR have no applicability to "*university*-developed" innovations.  Ex. 5 (Fed Cir. 18-1559 at Dkt. 54) at 3 n.3 (emphasis added).  But again, the asserted patents here were not developed by UNM.

### D.    Third Party ITRI International is in California

ITRI International Inc. of San Jose, California is "a subsidiary of" original patentee ITRI discussed above.  Ex. 6.  ITRI International engages in "IP business."  *Id*.  It "works with ITRI in mostly out-bound technology licensing and transfer."  Ex. 7.  Being the subsidiary of ITRI that handles out-bound licensing in the United States, ITRI International may have relevant witnesses and evidence in California, including witnesses and evidence regarding the potentially invalid patent assignments involving ITRI, Sino, and Rainforest.  These witnesses and evidence may be relevant to (i) determining whether Rainforest has standing to sue, (ii) whether ITRI's licensees in the United States had marked covered products with the asserted patents under 35 U.S.C. § 287(a), and (iii) the proper measure of any damages (*e.g.*, the determination of a reasonable royalty, demand for the patented inventions).

### E.    Third-Party Intel is in California

Intel Corporation ("Intel") petitioned for *inter partes* review of the asserted patents.  Ex. 8 (Petition in IPR2020-01576); Ex. 9 (IPR2020-01578).  The parties settled the IPRs, presumably resulting in a license to Intel.  Ex. 10 at 2 ("The parties have settled …").  Intel is headquartered in Santa Clara, California.  Ex. 11.  Intel has witnesses and evidence in California relating to its license with Rainforest.  Such evidence may be relevant to damages and liability.

Intel also has witnesses and evidence relating to the validity of the asserted patents (*e.g.*, prior art systems and publications). For example, one of Intel's prior art references in IPR2020-01576 was US 2007/0155387 ("Li"), assigned to Intel. The named inventors on the Li reference are Qignhua Li (of Sunnyvale, California) and Xintian E. Lin (of Mountain View, California). Ex. 12. As another example, one of Intel's prior art references in IPR2020-01578 was US 2006/0114816, also assigned to Intel. Ex. 13.

## F.    Third-Party Qualcomm is in California

Qualcomm Incorporated ("Qualcomm") also petitioned for *inter partes* review of the asserted patents. Ex. 14 (Petition in IPR2021-00375); Ex. 15 (Petition in IPR2021-00582); Ex. 16 (Petition in IPR2021-00377). Qualcomm is headquartered in San Diego, California. Ex. 17. Qualcomm has witnesses and evidence in California relevant to damages and liability. Qualcomm also has witnesses and evidence in California relating to the validity of the asserted patents (*e.g.*, prior art systems and publications).

## G.    Third-Party Apple is in California

Rainforest previously sued Apple in this District on July 29, 2019. Case No. 1:20-cv-00351-ADA. Due to settlement, the case was dismissed on September 4, 2020. *Id.* at Dkt. 80. Apple has its principal place of business in Cupertino, California. Apple has witnesses and evidence in California relating to its license with Rainforest. Such evidence may be relevant to damages and liability. Apple more than likely also has witnesses and evidence relating to the validity of the asserted patents (*e.g.*, prior art systems and publications).

## H.    Third Party LG Electronics MobileComm is in California

In 2015, before Rainforest acquired the patents, ITRI sued LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics MobileComm U.S.A., Inc. in the Eastern District of Texas. Case 2:15-cv-552-JRG. Possibly due to settlement, the case was dismissed on Aug. 26,

2015. *Id*. at Dkt. 25.  ITRI asserted that LG Electronics MobileComm U.S.A., Inc. is a California corporation having its principal place of business in San Diego, California.  *Id*. at Dkt. 1 ¶ 4.  LG Electronics MobileComm U.S.A. has witnesses and evidence in California relating to its license with Rainforest.  Such evidence may be relevant to damages.  LG Electronics MobileComm U.S.A. may also have witnesses and evidence relating to the validity of the asserted patents.

## III.    LEGAL STANDARDS

A district court may transfer a case to "any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. §1404(a).  A transfer of venue analysis has two steps.  First, courts decide "whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) (quoting 28 U.S.C. §1404(a)).  Second, courts consider eight factors to decide whether transfer would promote the convenience of the parties and witnesses and/or the interest of justice.  *Id*. at 314-15.  The *Volkswagen* factors include "(1) the relative ease of access of sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

As one particularly relevant factor in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc*., 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

If the proposed transferee forum is "clearly more convenient" than the current forum, the case should be transferred. *Volkswagen*, 545 F.3d at 315; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *10 (E.D. Tex. Dec. 22, 2017) ("[T]he Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer.").

## IV.    THIS CASE SHOULD BE TRANSFERRED TO THE CDCA

This case should be transferred to the CDCA because (i) no party has any material connection to the WDTX; (ii) the relevant third parties and their evidence, including TP-Link USA, ITRI International, Intel, Qualcomm, Apple, and LG Electronics MobileComm, are within the CDCA's subpoena power; and (iii) this Court should not condone Rainforest's attempt to manipulate venue by deliberately omitting from this lawsuit the undisputed importer and seller of the accused products in the United States, TP-Link USA, which is located in the CDCA.  On the other hand, not a single *Volkswagen* factor favors keeping this case in the WDTX.

### A.    This Action Could Have Been Brought in the CDCA

Rainforest alleges that the WDTX has personal jurisdiction over TP-Link Tech under a "stream of commerce" theory because TP-Link Tech delivers the accused products to "intermediaries" (*i.e.*, TP-Link USA) in the United States. Cmplt. at ¶ 13.  TP-Link Tech disputes that allegation and has moved to dismiss for lack of personal jurisdiction in this District. Dkt. 45. Moreover, in its motion to dismiss, TP-Link Tech has already stated that it agrees to submit to jurisdiction in the CDCA. *Id.* at 1.  Accordingly, the "threshold requirement" is met, and the Court

should decide whether the CDCA is a clearly more convenient forum. *Uniloc USA, Inc.*, 2017 WL 11553227, at *5.[5]

### B.    The CDCA Is Clearly More Convenient Than the WDTX

The CDCA is clearly more convenient. Several factors strongly favor transfer, including: the convenience of the witnesses; the relative ease of obtaining evidence; the availability of compulsory process for third-party witnesses (including several third parties with which Rainforest has licensed and/or litigated against); the local interest; and the public policy that a plaintiff like Rainforest should not be allowed to manipulate venue by omitting the key party. At most, the other factors are neutral. And no factor favors keeping this action in the WDTX.

### 1.    The Cost of Attendance of Willing Witnesses Favors Transfer

First, TP-Link Tech does not have *any* witnesses or evidence in the United States. If TP-Link Tech's witnesses are forced to travel to the United States for trial, trial in the CDCA would be far more convenient because the Los Angeles International Airport is more accessible to China than any airport in Texas, not counting extra travel time from an airport in Texas to Waco. *See In re Volkswagen of Am., Inc.*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). The extra travel time and expense associated with testifying makes the WDTX clearly less convenient for these witnesses, as it would disrupt their family and business lives. This is the "single most important factor," and it favors transfer of this action to the CDCA. *Genentech*, 566 F.3d at 1343 (citation omitted).

---

[5] If the CDCA lacks personal jurisdiction, then so too does this Court.

Second, Rainforest's own witnesses are all presumably in New Mexico. Rainforest's choice of forum is accorded little weight (*Volkswagen*, 545 F.3d at 1314-15), particularly where it has chosen a forum where none of the parties reside or have a place of business. In any event, travelling from Albuquerque to Los Angeles for trial is at least as convenient as travelling from Albuquerque to Waco for trial.

Third, to the extent any of the third-party witnesses (from TP-Link USA, ITRI International, Intel, Qualcomm, Apple, and LG Electronics MobileComm) are "willing" to travel to the WDTX, they would have to travel from California where they live and work to testify at trial in the WDTX. *10Tales, Inc. v. TikTok Inc.*, No. 6:20-cv-00180-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) ("Rather than time-consuming and costly travel being inevitable regardless of venue, most witnesses here are faced with either extreme—the NDCA as arguably the most convenient federal forum for such witnesses, or this District located over 1,300 miles further."); *Uniloc USA, Inc.*, 2017 WL 11553227, at *9 (ordering transfer where "Apple has named multiple party and non-party witnesses residing within the Northern District of California, while Uniloc has named only one employee who resides part-time in the Eastern District of Texas."). This strongly supports transfer. And as discussed further below, if these third parties are not willing to travel to the WDTX to testify in this case (and many of them likely are not), they cannot be compelled to do so by this Court.

### 2. The Relative Ease of Access to Source of Proof Favors Transfer

The relative ease of access to sources of proof is another important factor that favors transfer here. *In re Apple Inc.*, 979 F.3d at 1340 ("[T]he bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *In re Genentech, Inc.*, 566 F.3d at 1345). Under this factor, "the question is relative ease of access, not absolute ease of access."

*Data-Scape, Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (citation omitted); *see also Genentech*, 566 F.3d at 1345. There is significant evidence located in the CDCA, and *zero* evidence identified as residing in the WDTX. So this factor also strongly favors transfer. *10Tales, Inc.*, 2021 WL 2043978, at *2.

First, TP-Link Tech does not have any evidence in the WDTX. *See* Zhang Decl. TP-Link USA located in the CDCA is solely responsible for importing and selling TP-Link branded products in the United States, including the accused products. *Id*. The evidence relating to sales, damages, and Rainforest's alleged jurisdictional and infringement theories thus resides in the possession, custody, and control of a non-party located in the CDCA. *Id*.

Second, numerous third parties, including ITRI International, Intel, Qualcomm, Apple, and LG Electronics MobileComm have evidence in the CDCA and elsewhere in California. This evidence relates to ownership of the asserted patents, licensing of the asserted patents, patent marking, calculation of damages, and patent validity. *See* Section II, *supra*.

For these reasons, access to proof also strongly favors transfer to the CDCA. *10Tales, Inc.*, 2021 WL 2043978, at *2 ("While TikTok may generate or store physical documentation at locations in other districts, the physical documentation relating to the substantive focus of the complaint is likely to come from TikTok's operations in California.").

### 3.    The Availability of Compulsory Process Favors Transfer

This factor also strongly favors transfer. This factor "considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc*., No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019). "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc*., 581 Fed. App'x 886, 889 (Fed. Cir. 2014).

That is the case here because far more non-party witnesses are in the CDCA (or elsewhere in California and therefore within the CDCA's subpoena power, *see* Rule 45 (c)(1)(B)) than in the WDTX. These include corporate representatives from ITRI International, corporate representatives from Intel, corporate representatives from Qualcomm, corporate representatives from Apple, and corporate representatives from LG Electronics MobileComm. A number of those witnesses likely can be compelled in the CDCA—although not here—to provide testimony relevant to patent ownership, patent licensing, damages, and validity. *See* Section II, *supra*.

More importantly, numerous jurisdictional and infringement allegations in Rainforest's own Complaint center on non-party TP-Link USA as the importer/seller of the accused infringing products that supposedly is somehow acting in concert with TP-Link Tech. *See* Cmplt. at ¶ 13; Dkt. 4. Thus, per Rainforest's own allegations, non-party TP-Link USA and its respective employees are critical to Rainforest's jurisdictional, infringement, and damages theories. So, this factor also strongly favors transfer because of the availability of compulsory process in the CDCA. *10Tales, Inc*., 2021 WL 2043978, at *3 ("The allegations set forth in 10Tales' complaint implicates third-party entities such as Google, Apple, and various social media companies all of which are well-known to have strongest presence in California."); *Uniloc USA, Inc*, No. 2017 WL 11553227, at *6-*7.

### 4.    The Local Interest Favors Transfer

The local interest factor also favors transfer. Most importantly, the CDCA is home to TP-Link USA, a significant business that could be impacted by this case, and also home to employees whose livelihoods also could be impacted. Further, many of the parties that have licensed the patents or are litigating with Rainforest are headquartered in California, including Intel, Qualcomm, Apple, and LG Electronics MobileComm.

13

In contrast, Rainforest and TP-Link Tech have no connection to this forum. Finally, the accused infringing products are sold nationwide so the "fact that infringement is alleged in the Western District of Texas gives that venue no more of a local interest than the Northern District of California or any other venue." *In re Samsung*, 2 F.4th at 1380 (ordering transfer).

### 5.   Court Congestion Slightly Favors Transfer or Is at Worst Neutral

The median time from filing to trial in civil cases was 25.5 months in the WDTX and only 24.2 months in the CDCA. *See* Ex. 18 (Federal Court Management Statistics). In any event, when, as here, "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh those other factors.'" *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021) (quoting *In re Genentech, Inc.* 566 F.3d at 1347). Such time-to-trial statistics "are plainly insufficient to warrant keeping this case" in the WDTX "given the striking imbalance favoring transfer based on the other convenience factors." *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *5 (Fed. Cir. Jan. 19, 2022).

### 6.   The "Other Practical Problems" Factor Favors Transfer

As discussed in TP-Link Tech's pending motion to dismiss, this Court does not have personal jurisdiction, but TP-Link Tech has agreed to suit in the CDCA where TP-Link USA is located. TP-Link USA could be joined in the CDCA but cannot be joined here because venue is improper. Transferring the case would avoid having to decide the issues of jurisdiction.

Further, this Court should not allow Rainforest to manipulate venue by deliberately omitting TP-Link USA from suit while, at the same time, using TP-Link USA as the basis for alleged jurisdiction against TP-Link Tech. Thus, if the Court does not dismiss this case outright, it should transfer it to the CDCA. *In re Samsung Elecs*, 2 F.4th at 1377 ("[W]e are not bound by a plaintiff's efforts to manipulate venue."); *id*. at 1379 ("[D]isregarding this manipulation," plaintiff "could have filed suit in the Northern District of California").

14

**7.    All Remaining Factors Are Neutral**

Both forums have experience and expertise in patent law, and TP-Link Tech is unaware of any issues related to conflicts of laws or the application of foreign law.

**V.    CONCLUSION**

The parties have met and conferred in a good faith attempt to resolve the matter by agreement, but Rainforest would not agree to transfer this case to the CDCA where TP-Link USA is located. As shown above, several factors strongly favor transfer, and no factor favors keeping this case in the WDTX. Thus, if this Court does not dismiss the case for lack of personal jurisdiction and/or insufficient service of process, it should transfer it to the CDCA.

Dated:  September 1, 2022                     Respectfully submitted,

/s/ *Paige Arnette Amstutz*
Paige Arnette Amstutz
Texas State Bar No. 00796136
SCOTT, DOUGLASS & MCCONNICO, LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
pamstutz@scottdoug.com

Steven D. Moore
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA  94111
Telephone: (415) 576-0200
Facsimile: (415) 576 0300
smoore@kilpatricktownsend.com

Kristopher L. Reed (*pro hac vice*)
KILPATRICK, TOWNSEND & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Telephone: (214) 922-7143
Facsimile: (214) 922-7101
kreed@kilpatricktownsend.com

15

16

Kevin M. Bell (*pro hac vice*)
Edward J. Mayle (*pro hac vice*)
KILPATRICK, TOWNSEND & STOCKTON LLP
1400 Wewatta Street Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
kbell@kilpatricktownsend.com
tmayle@kilpatricktownsend.com

*Attorneys for Defendant*
*TP-Link Technologies Co., Ltd.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 1, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Paige Arnette Amstutz*