—1—

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNM RAINFOREST                    *
  INNOVATIONS                     *      December 6, 2022
                          *
VS.                               *      CIVIL ACTION NOS.
                          *
TP-LINK TECHNOLOGIES              *       W-19-CV-262
  CO., LTD                        *
ASUSTEK COMPUTER, INC.            *       W-20-CV-142
D-LINK CORPORATION                *       W-20-CV-143
ZYXEL COMMUNICATIONS
  CORPORATION                     *       W-20-CV-522

BEFORE THE HONORABLE ALAN D ALBRIGHT
MOTION HEARING (via Zoom)

APPEARANCES:

For the Plaintiff:    Brian Melton, Esq.
                      Susman Godfrey, L.L.P.
                      1000 Louisiana Street, Suite 5100
                      Houston, TX 77002

                      Corey Martin Lipschutz, Esq.
                      Shore Chan DePumpo LLP
                      901 Main Street, Suite 3300
                      Dallas, TX 75202

                      John P. Lahad, Esq.
                      Susman Godfrey, L.L.P.
                      1000 Louisiana Street, Suite 5100
                      Houston, TX 77002

                      Charles L. Ainsworth, Esq.
                      Robert Christopher Bunt, Esq.
                      Parker, Bunt & Ainsworth, P.C.
                      100 East Ferguson, Suite 418
                      Tyler, TX 75702

For Defendant TP-Link Technologies:

                      Paige Arnette Amstutz, Esq.
                      Stephen Burbank, Esq.
                      Scott, Douglass & McConnico, LLP
                      303 Colorado Street, Suite 2400
                      Austin, TX 78701

2

Edward J. Mayle, Esq.
Kristopher L. Reed, Esq.
Kilpatrick Townsend & Stockton LLP
1400 Wewatta Street, Suite 600
Denver, CO 80202

Andrew N. Saul, Esq.
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street Ne, Ste. 2800
Atlanta, GA 30309-4528

For Defendant AsusTeK:

John W. Downing, Esq.
Marcus A. Barber, Esq.
Kasowitz Benson Torres, LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065

Allen Franklin Gardner, Esq.
Allen Gardner Law, PLLC
609 S. Fannin
Tyler, TX 75701

For Defendant D-Link Corporation:

Brock S. Weber, Esq.
Pillsbury Winthrop Shaw Pittman LLP
4 Embarcadero Center, 22nd Floor
San Francisco, CA 94111

For Defendant ZyXEL:

Mark D. Strachan, Esq.
Bradley Arant Boult Cummings
1201 Elm Street, Suite 4400
Dallas, TX 75270

Christine Yang, Esq.
Law Offices of S. J. Christine Yang
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708

Court Reporter:    Kristie M. Davis, CRR, RMR
PO Box 20994
Waco, Texas 76702-0994
(254) 340-6114

Proceedings recorded by mechanical stenography,
transcript produced by computer-aided transcription.

(Hearing begins.)

DEPUTY CLERK:  A Civil Action in Cases 6:19-CV-262, UNM Rainforest Innovations versus TP-Link Technologies Co., LTD; Case 6:20-CV-142, UNM Rainforest Innovations versus AsusTeK Computer, Incorporated; Case 6:20-CV-143, UNM Rainforest Innovations versus D-Link Corporation; and Case 6:20-CV-522, UNM Rainforest Innovations versus ZyXEL Communications Corporation. Cases called for a motions hearing.

THE COURT:  If I could have announcements from counsel, please.

MR. MELTON:  Yes, Your Honor.  Brian Melton.  And then with me is John Lahad and Chris Bunt. We represent University of New Mexico Rainforest.

MR. STRACHAN:  Your Honor, Mark Strachan and Christine Yang on behalf of ZyXEL.

MR. DOWNING:  Your Honor, John Downing and Marcus Barber on behalf of AsusTeK.

MR. GARDNER:  Also Allen Gardner for AsusTeK, Your Honor.

THE COURT:  I see others.

MR. WEBER:  Good afternoon, Your Honor. This is Brock Weber at Pillsbury Winthrop Shaw Pittman for defendant D-Link Corporation.

THE COURT:  Thank you, sir.

4

MS. AMSTUTZ:  Good afternoon, Judge Albright.  Paige Amstutz of Scott, Douglass & McConnico.  I'm joined with my colleague Stephen Burbank, who you cannot see off camera.

And then along with me are my colleagues from Kilpatrick Townsend, Kris Reed and Andrew Saul.  And we represent TP-Link.

THE COURT:  I think Stephen's wise to give you the camera.

(Laughter.)

THE COURT:  I see Mr. Ainsworth.

MR. AINSWORTH:  Hi, Judge.  And also with us for the plaintiff is the general counsel for the plaintiff, Lisa Kuuttila.

MR. MELTON:  Yeah.  She was joining just as I introduced.  She's actually the president and chief economic development officer.

THE COURT:  Mr. Melton, big slip up on your part.

MR. MELTON:  I know.

THE COURT:  Beginner's problem.

MR. MELTON:  Yeah.  If Charley Ainsworth is bailing you out, you know you're in trouble.

THE COURT:  That's probably true.

Okay.  I understand we have two issues.

Was that everyone?  I think so.  But if not, please let me know if anyone else is on.

Okay.  I have two motions.

With regard, first, to whether the Court should continue to stay the actions against AsusTeK, D-Link, ZyXEL because of outstanding ownership issues, I'll hear arguments on that first.

MR. MELTON:  Yes.  Your Honor, I think I should go first, and then they can go in serial after me.

And just so there's context, Your Honor, these patents have previously been litigated in your court against Apple and Dell.  And that resulted in four licenses with Apple, Qualcomm, Intel and Broadcom.

I wasn't involved when these cases were filed.  We've gotten involved in the last several months.

Your previous order was that the case was stayed because of the pending action in New Mexico that dealt with title and the IPR proceedings.

The New Mexico title case is totally over.  There's no appeals from it.  And the IPRs have been decided.  Some -- our claim survived.  Some of the claims didn't survive intact.  There were substitute claims, and that is on appeal.

And in this case and in these cases -- I want it to be clear, because reading the briefing it wasn't all that clear -- we're asserting Claim 8 of the '096 patent, and that's the only claim we're asserting in these cases.

We've put some caveats in there about substitute claims, but I don't know when those are ever going to issue.  And the Court's OGP takes that into consideration.  If and when I ever want to add a claim, I got to come to you and get it in under good cause and no prejudice.

And so to talk specifically about the ownership issues, this Court is the only court that can decide the ownership issue.

Before we were involved, there -- the Court -- they brought a claim to quiet title in New Mexico.  That was the decision of UNM and its lawyers. And it was -- I understand why they did it.

Every time we bring this case -- these cases, we're going to have a challenge to ownership. We were thinking, go file one in New Mexico and get it resolved once and for all.

That court held there was no jurisdiction over ITRI.  ITRI filed one in Taiwan.  That court held there was no jurisdiction over the U.S. patents or UNM.

So they can't determine the ownership issues as to UNM and the U.S. patents.  What they said was, as to the Taiwanese company, that Sino Matrix, we can hold -- we can rule on that.

So as of today, the only court that can -- and this is normal.  Every case has a -- not every case.  It's part of the plaintiff's case to prove ownership.  There's disputes about ownership in several cases, and it's resolved in the district court where the patents are pending.  And that's the only court -- based on these jurisdictional challenges, you're the only one that can resolve them.

So we think you stayed it because that New Mexico case was pending, but that's gone.  And there's no appeals from that.

So we think the case shouldn't be stayed because of an ownership issue that is normal to patent litigation and should be determined by you or a jury.

And then I could keep on and do the IPR piece, but that's up to you, Judge.  You asked about the --

THE COURT:  Yeah.  Let's break them in two.

MR. MELTON:  Okay.

THE COURT:  I'm, you know, just a lawyer

from south Texas doing the best I can.

MR. MELTON:  That's it, Judge.  It's an ownership issue.  It's resolved in the district court. And these other ancillary proceedings that UNM has not -- has been held not to have jurisdiction of us in Taiwan and ITRI in the U.S.

THE COURT:  Very good.

A response?  Hopefully from only one person, but I'd be shocked if it were.

MR. STRACHAN:  Your Honor, may it please the Court.  Mark Strachan --

THE COURT:  Yes, sir.

MR. STRACHAN:  -- on behalf of ZyXEL.

I agree with my friend that the ownership decision is now on your shoulders.  One small more task for you to carry.

The New Mexico case is -- ended without resolution.  The pending Taiwanese case did hold that New Mexico's predecessor in interest violated its original agreement with ITRI in making assignments, however refused to apply that finding of violation to New Mexico.

However, that finding, we think, is significant.  It may compel this Court to respect it, at least it is something that the Court should consider

in making an evaluation.

Your Honor, my client previously filed a motion to dismiss for lack of standing based on the pleadings, which motion the Court has denied.

I suspect that the next step is that we're going to have to get some discovery related to that transaction, and that discovery will have to take place in Taiwan.

Because of the time that might be required for that, that should be a consideration in whether to stay the Court.

Your Honor, I do not want to have this issue of standing or ownership distract us from the IPR and the current appeals out of that. That, in my opinion, is the key and the main reason you should continue the stay of the case.

But to respond to your question about the ownership issue, regardless of how the Court proceeds, that is -- we think should be front and center and should be addressed, including discovery, before any other actions are taken in the cases.

THE COURT: Anyone else?

Hearing nothing else, Mr. Melton, anything else?

MR. MELTON: Only, Your Honor, that that

Taiwanese court said it could specifically not reach the U.S. patents because Sino Matrix had already transferred them to University of New Mexico.

So I just wanted to clear up any misunderstanding about that.  But like I said, I don't -- I think the bigger issue is IPR.

THE COURT:  Okay.  Then why don't you go ahead and take that up next, Mr. Melton?

MR. MELTON:  Your Honor, this Court is not in the habit of staying cases during the pendency of an IPR.  So let alone now that the IPR's finished, they got some of what they wanted.  They invalidated some claims.  There's some substitute claims pending.

And, you know, Claim 8 of the '096 patent made it all the way through intact and that's the only one we're asserting in this case.  I said that earlier, and we are happy to go to trial with just that claim. A one-claim, one-patent case.

And so we think all these cases should be consolidated under a similar pretrial schedule.  The standard for the stay is -- you know, we have narrowed the case down, like I just said.  We've got one claim in one patent in the case.

The prejudice to UNM, we've already been through a stay.  The case law says, in courts that are

willing to stay it during the IPR process, it's a different look when you're looking at unlimited time on appeal versus the limited time by statute that IPR has to proceed.

So we think this Court would not probably have stayed this case in a vacuum back when it did had it not been for that ancillary proceeding about ownership.

And we think given the status of the case, that one claim is intact and we're willing to go to trial on it, that suffices to meet our burden that the stay should be lifted as to the three cases and not instituted as to TP-Link.

THE COURT:  So when you say you're happy -- your client is happy to move forward, I think what I anticipated hearing from the defendant is it might be wasteful to move forward if supplemental claims are allowed, all the work that would be required to do that.

And so why don't you -- are you saying that you are -- on behalf of your client, we're going to trial on Claim 8 and that's it regardless of what happens?

MR. MELTON:  Well, what I'm saying, Judge, is it's not in the case.  I got to come to you

12

to get relief to amend it under the OGP.

THE COURT:  Okay.

MR. MELTON:  Clearly, if you set a trial for April of next -- 2020 -- I guess we're going into 2024 now.  You know, if we get a certificate in the next month, I'll probably come to you.  If we get one two, three, four months before trial, I know better than to come to you.

So that's the caveat.

(Laughter.)

MR. MELTON:  I do.  I know.  I know when to say when.

THE COURT:  Okay.  Okay.  That's fine.  And also --

MR. MELTON:  And yeah.

THE COURT:  I'm told that one of the arguments -- and I've been through at least -- I have what was sent in by the parties -- that I think the defendants are going to tell me that I ought to -- that judicial economy would benefit from the fact -- I think what they're going to tell me is they are still challenging the validity of Claim 8 which survived.

But they're challenging on appeal and that I ought to wait to hear what the appellate court does with respect to that.  I think I know your answer,

but if you'll go ahead and tell me your response to that.

MR. MELTON:  One, we don't know the timing of that.

Two, we -- the likelihood -- I mean, you've read the stats.  We've got a one-in-five chance of getting that, even through appeal.

And so we don't think there's any reason to stay it because of that.  I mean, the case has been streamlined.  And we're ready to go on the claim that we have.

So it's -- the likelihood of success on appeal for them is minimal.  And, you know, I mean, that's the same argument that would have been good when the -- you know, the Court -- like I said, it's not in the habit of staying cases for IPRs.

Now, given this stage of it where there's more resolution and more definiteness of Claim 8 is valid, there's even less reason to stay it now.

THE COURT:  I got it.

A response?

MS. AMSTUTZ:  Your Honor, Paige Amstutz.

This is kind of a weird scenario because I represent the one out of four defendants that doesn't currently have a stay.  And there's lots of reasons why

14

we're late to the stay party, but I'm happy to take you through the timeline.

But I was actually -- a lot of those reasons are the same reasons that the stay should remain in place as to the other three defendants.

And candidly, my friends on the defense side asked me to present these arguments to you. So even though my client is not a party to the motion to lift stay per se, the arguments are much the same and go to the very questions you just asked.

So with permission, may I interject myself into this?

THE COURT: Sure.

MS. AMSTUTZ: Okay. I'm going to just go ahead and address the questions you have, Your Honor. If you have any other questions about why TP-Link is just now pursuing a stay, I can certainly address those.

But I will tell you the short answer is lots of procedural wrangling, particularly with service. And then once summons was issued there were a series of extensions that were granted and negotiated, quite frankly, with lawyers that aren't here today. And TP-Link actually responded to their complaint, although filed in 2019 and 2022.

So here we are asking the Court to put us in the same procedural posture as our companion defendants.

And one thing that I want to take you to, Your Honor, and just make really clear is, the first stay that was discussed regarding the ownership issues. That was opposed. And the Court granted that stay over plaintiff's opposition.

While that stay was in place, which was roughly a year between July 2021 and July 2022, these IPR proceedings were filed against all three of the patents. The '096, the '204 and the '346.

And in July of 2022, the plaintiff moved to lift the stay because the definitive point that the parties had agreed to had occurred, and that had been -- the last final written decision had been issued around that time.

And when they made that agreement back in July of 2021, they filed an identical stipulation in each of the three cases that contemplated what the parties and, hopefully, the Court would consider in whether to decide to lift the stay.

Kris, if you don't mind going to Slide 2.

I'm going to share my screen hopefully quickly.

16

Are you able to see that, Judge?

THE COURT:  No.

MS. AMSTUTZ:  How about now?

THE COURT:  Yes.

MS. AMSTUTZ:  Okay.  So when they agreed to that first stay -- I mean, I'm sorry.  When they agreed to the second stay, which had to do entirely with the IPR proceedings and those stipulations, they said:  Whether the stay should be lifted at that time -- and that was referring to the last final written decision -- or not will be at the Court's discretion based on the parties' positions regarding, for example, whether amended claims are allowed, whether original claims are maintained, whether all or some of the claims are invalidated and/or whether appeals have been filed or are likely.

So what happens in the IPRs is that when the final written decision was issued with regard to the '096 and '204, that was issued in July of 2022. And then with regard to the '326, that was issued in August of 2022.

And the net effect of those, without getting too far in the weeds, but I think it goes to this notion that plaintiff has narrowed the case when it really hasn't, is that starting with the '204

patent, the PTAB found that five of the claims were not patentable and denied the plaintiff's motion to amend.

With regard to the '326 patent, the PTAB found that five of the claims were not patentable, but it allowed them to amend four of them.

Plaintiff filed a motion for rehearing in both of those actions, which was denied. And now the appeals in the '204 and the '346 aren't even due until December 19th of 2022.

We don't know what they're going to do with those. They haven't told us what they're going to do with those.

But what we do know is with the '096 patent, the PTAB found six claims to be unpatentable but one survived, and that's the one that Mr. Melton is referring to, Claim 8.

It also granted the plaintiff's motion to amend and allowed six substitute claims. The petitioner filed an appeal with regard to the surviving claim and the motion to amend. The patent owner filed a cross-appeal. They then consolidated, and briefing presumably will start in December.

So that gets us to the interesting part. I say interesting but also a little unnerving at the same time.

18

Going back to the specific language in the stipulation, as of the day of the written -- or as of October of 2022, we had all of these considerations in play.  We had an original claim maintained.  We had claims that were invalidated.  We had amended claims that were allowed, but we got to wait for those patent certificates.

And by October 2022, we've already had one appeal in the '096 patent and we've got potentially other appeals regarding the '204 and the '346 patent.

And so at that point, and I'm not going to blame them, I think plaintiff thought, I got to do something, right?  But it was the kind of something.

And I'm going to explain what I mean by that.  In October of 2022 plaintiff came to the defendants and it said, okay, in light of these IPR decisions, here's what we -- and this is a quote -- intend to do.  We intend to withdraw the assertion to the '204 and '346 patents.  And we intend to narrow the '096 patent to the one surviving claim which is Claim 8, but.

And, Judge, this is what Mr. Melton calls a caveat.  I call it a gigantic gap carveout "but."

But we're going to do it -- and I want to get this language right -- without prejudice to the

addition of allowing substitute claims once the PTO issues a certificate.

And so with that stated intention, plaintiff let us know that they opposed TP-Link's motion to stay. And they were going to lift the current stay as to the other three defendants.

Now, as we sit here today, that has not happened. It has been stated as an intention. It has not been memorialized. It has not been formalized.

And all it's done is to toss a bone out to the Court with the appearance of narrowing the case to prevent TP-Link from getting a stay and to make the existing stay go away. But make no mistake, Your Honor, this is not narrowing.

All it is is propping the door open, that once the PTO issues those certificates, for them to add upwards of six more claims or four more claims. As there are, between the three patents, a total of ten substitute claims, many of which are independent claims.

So it's that uncertainty that it is a miss. And the reason it's a problem and warrants a stay --

And you can bring that down, Kris, if you want to.

-- is we don't know what we're going to be trying at the end of the day.

But beyond the jury trial we don't even know what we're going to be litigating to get to that point.  There's going to be different preliminary infringement contentions, invalidity contentions, discovery, expert designations, expert discovery, dispositive motions.

And that uncertainty is what a stay is meant to resolve.

And frankly, Your Honor, taking the bait of plaintiff's suggestion, which is all it is, would amount to a significant waste of resources.  Not just the parties and their attorneys, but to a Court who's inevitably going to have to hear disputes over four very complicated, very contentious cases in a Court that already understandably has strained resources.

And then looking at the prejudice factor, Your Honor, with regard to TP-Link in particular, our case is in its absolute substantive infancy.  We only responded.  We just had a scheduling order issued.  Our trial is set for April of 2024.

But beyond that, the plaintiff is not practicing the patent.  No one is a competitor. There's little consequence to waiting to let the

invalidity and -- or the validity of the claims shake out so that we can see what, if any, claims actually need to be tried in this case.

And by contrast, just taking for example again, TP-Link, if you look at the preliminary infringement contentions they served on that one claim, Claim 8, we're going to be litigating about 60 accused products with the very real potential that that's going to increase if patent certificates issue and additional claims are added.

This is not fear mongering. This is not unfounded. The plaintiff has threatened to do this with this big gaping caveat on four occasions and four pleadings against all four cases.

Now, if the Court's inclined to not grant the stay to TP-Link and lift the stay as to the other ones, and the plaintiff says definitively it's Claim 8 on the '096 patent, that's one thing. No additional claims to be added.

But they haven't said that. And I haven't heard them say that today here either. They're leaving the door open.

So to wrap up, Your Honor, plaintiff's intention or suggestion that these cases should be not only tried but worked up piecemeal based on when these

PTO certificates may issue, it just -- it makes no sense.

And I suggest to the Court that letting the dust settle on the IPR appeals and which claims are actually going to survive at the end of the day makes the world of sense.

THE COURT:  Well, let me ask you this: The point I heard Mr. Melton make is that he doesn't, on behalf of his clients, just get to add -- we're past the point where he just gets to say, okay.  We've had a new claim allowed.  I'm going to add this in.

So as he moves forward -- as time moves forward, he's under -- he's also at peril of potentially losing the ability to bring claims. Because if the Circuit or the -- either the PTO or the Circuit, however it works out, if they allow additional claims or they approve the claims or say things aren't invalid or whatever permutations there might be, Mr. Melton, it seems to me, is at equal risk of there being enough time having passed as the defendants are.

And what I mean by that is, it's not like whatever the mid date is between now and the trial date, you know, before then, it's okay; after that, it's okay.

What I'm saying is -- I'm speaking on

behalf of Mr. Melton, which no one really needs to do, but I think what he's saying is, there's no point in us waiting, Judge. We -- Claim 8 -- we gave -- you stayed it. The defendants had their chance.

I think you said somewhere in there that, you know, he -- that Mr. Melton had said that he had narrowed down the claims. I feel pretty certain that he didn't have anything to do with the narrowing down of claims that are here. He probably vigorously opposed that. But we are where we are.

So why -- I'm not sure I follow why it's not fair to have the trial set for Claim 8. And as other claims are allowed, depending on where that is, whether it's January of 2023 -- that's next year, right, '23 -- or January of 2024, you know, I will be the governor of whether or not I think it's fair for those to be allowed, whether or not we're at a point in the case. And then we can take up what the plaintiffs do with those claims one way or the other.

I'm not sure I'm seeing where the robust -- and here's what I mean too. If -- I get it.

If I allow the case -- if I lift the stay and allow the case to move forward, depending on how you define the word "prejudice," that makes you unhappy and prejudices you because it's better for you if I

—24—

stay it.

But I'm not -- if the standard is -- and I think it probably is -- is unfair prejudice, I'm not sure why keeping the case on track with regard to Claim 8 and as the future unfolds, you know, I can decide what to do that I think would be the fairest to both parties.  And I'm not sure how I see how your client or the others are unfairly prejudiced.

MS. AMSTUTZ:  Well --

MR. STRACHAN:  Your Honor, Mark -- can I address that?

MS. AMSTUTZ:  Absolutely.

MR. STRACHAN:  ZyXEL -- my client is the one who is involved in the underlying IPR and also on the appeals.  So perhaps I could address that with the permission of everyone else.

THE COURT:  Sure.

MR. STRACHAN:  Judge, Claim 8 is currently the subject of a pending appeal.

THE COURT:  Right.

MR. STRACHAN:  The additional six claims that Mr. Melton --

THE COURT:  But it's the subject of a current appeal because you lost.  I mean, the --

MR. STRACHAN:  Well, let me -- if I can

keep going, Judge, there's an "and" to that.

THE COURT: I've never done an IPR. I'm assuming the reason it's continued -- it's not Mr. Melton in here saying they beat us on every claim but we think the one that's most likely to get reversed on appeal is Claim 8.

I think what he's saying is the case was stayed for many reasons. You've had your shot. He took some damage, but this one survived. And now all you're doing is saying that the Patent Office might reverse what the folks below did.

That's the way I see it. If I'm wrong, because I never did IPRs, let me know. That's my perception.

MR. STRACHAN: You are right in what you said, but there's more.

THE COURT: Okay.

MR. STRACHAN: Also currently on appeal are the amended claims that Mr. Melton wants to reserve the right to ask you to allow in. So if you allow those in, every claim that he might assert, 8 and any others, will be subject to a parallel proceeding in the Federal Circuit while we proceed in your court.

In addition, and this is, I think, is a very big "and," and Mr. Melton's client has also

appealed the decision of the PTAB. So he is wanting to prosecute some claims in this Court now, and then also try to proceed in the Federal Circuit on claims that may or may not -- he may or may not seek to be bring back.

THE COURT: Let me ask you this --

MR. STRACHAN: Well, if I could -- I'm sorry, Judge. I had one more thing. But I'll let you --

THE COURT: You go or you'll forget it. But hopefully I'll remember my question. Go ahead.

MR. STRACHAN: Okay. The other thing that my -- Ms. Amstutz brought up is the other patents. They were allowed claims on the '326. And while the timing is not, I assure the Court that we will be appealing those as well.

So any potential amended claim he would try to bring in will be the subject of a pending appeal. That's all I wanted to note, Your Honor.

THE COURT: Okay. And here's the problem I'm having is that -- and I get there are issues that -- that your concerns about he'll bring other claims in if new claims are allowed. I get they're appealing all that too.

But I was involved in cases where we went

to trial.  I actually had a lawyer -- I think everyone was shocked because I won a case, but we won in Tyler on the defense side.  And not only did we get noninfringement, but we invalidated their best patent.

And, you know, like three months later they tried the case in New York that had been pending, you know, with the jury finding invalidity on that because it didn't have the collateral effect.

And it's -- you know, in other words, I'm very sympathetic to what you're -- everything that you're saying I get all of it.  But what I'm not sure I understand is why I would hold off --

See, I'm only looking at Claim 8 and I've heard everything that you said -- you know, Ms. Amstutz has said about that -- what might follow.  But to me what might follow is up to me to decide how to deal with.

My only opinion, my only deal right now -- and you might be saying, well, Judge, you're an idiot -- you're thinking it.  You wouldn't say it.  But, you know, you're an idiot because, gosh, it'd sure be easier if six months from now three more claims came out that if we did all these at the same time.  That's probably another thing that you're thinking too.

But for right now I'm not sure, again,

why if the defendant -- your client -- I guess your client was the one who was the one with the three IPR. If you presented everything you had to the three-judge panel and Claim 8 survived, then I'm not sure why I don't allow that to go on and worry about the other claims later.

MR. STRACHAN:  Your Honor, I will concede that if Mr. Melton would foreswear the -- any attempt to add any more claims and tell us all now, commit to doing nothing but 8, then your decision is easier and my position, in all candor, is harder.

I still wouldn't concede the case shouldn't be stayed, but I certainly would acknowledge that that would be a stronger case for Mr. Melton.

THE COURT:  I get that.  And he -- and he may, without intending to, be doing that, I mean, for all I know.

He's not saying -- he's not -- he's not saying he'll agree to do that, but he is certainly confident enough to know that if I allow things to move forward now, having heard everything I've heard and y'all are moving forward on Claim 8, then, you know, it'll be his burden to persuade me, not having to decide to stay the case and wait, why it would be fair to add other claims.

And in other words, he -- again, I keep saying, he doesn't get just -- he doesn't just get to add them.  And that's why I'm having a harder time understanding why the prejudice is unfair.

Maybe if he did just get to add them, I would understand it better.  But he's got to come to me and all of you will be assembled.  And the more time that passes, the less likely it would be that I would be persuadable that any of those should be added.

But I -- look.  I get this is -- that's why I'm here, you know.  I go home at night and think, you know, it's not hard to be fair, but it's hard sometimes to, you know, to -- I get, you know, I'm just doing my best to try and balance things for both sides.  And I certainly understand everything you've argued and why you're concerned.

And all I'm doing, I think in fairness to you all, is trying to articulate for you my thought process.  So if there's anything you want to add to it, you or Ms. Amstutz or anyone else can, or obviously, if there's anything Mr. Melton wants to add.

Is there anything else you'd like to add?

MR. MELTON:  No, Your Honor.  I wrote down a bunch of rebuttal points, and I'm not going to use any of them.

(Laughter.)

THE COURT:  Okay.

MR. DOWNING:  Your Honor, this is -- may it please the Court.  Could I have a moment?

THE COURT:  Sure.  Mr. Downing, have you appeared in front of me?  I don't remember that you have.

MR. DOWNING:  I have several times.  Thank you.

THE COURT:  Welcome back.  I see a lot of lawyers, and I just didn't -- I don't know that I remembered seeing you.  So welcome back.

MR. DOWNING:  Thank you, Your Honor.

Your Honor, you know, regarding your point about balancing, you know, AsusTeK raised the issue of standing.  And that was kind of one of the major issues in our -- you know, in our opposition to the motion to lift the stay.

And our concern is that that issue was never resolved.  You know, the case in New Mexico was dismissed.  And it was dismissed based on kind of a lack of personal jurisdiction.

And so from our view we still have this issue out there.  And we have statements that were made on the record in a declaratory judgment action that,

you know -- about the title and how that's applied.

And so if the Court is inclined to lift the stay in this case, would the Court be willing to, you know, allow the parties, you know, some sort of schedule that would allow us to address that standing issue before the case, you know, commences?

THE COURT: Mr. Melton?

MR. MELTON: Your Honor, I think, you know, if you lift the stay, we're going to have to negotiate and get the OGP in place. And I think that's the appropriate time to do this, not on the fly right now.

But I don't see why we would not do discovery on the whole case. I mean, it's not my practice to have a challenge to ownership and then just only do discovery for that. The Court's OGP puts a stay on discovery until --

THE COURT: I don't think --

MR. MELTON: Until you --

THE COURT: I don't think Mr. Downing -- and maybe let me go back to Mr. -- I think Mr. --

Well, Mr. Downing, were you asking for there to be a window where you only do that first so that the issue would be resolved?

The way I took it was that you wanted it

to be clear that that issue hadn't been waived.  And as the case proceeds forward and there's discovery that's going to be taken that you -- that defendants would be allowed to continue taking discovery on that.

Those are -- if, Mr. Downing, if you want to tell me which of those --

MR. MELTON:  Judge, if you were to ask me if I agreed with that, yes.  They have to do discovery on this.

MR. DOWNING:  So, Your Honor, our proposal would be to address the standing issue fully.  And the basis is because, you know, kind of some of the same points that were made before, that this is not a normal case, you know, regarding the standing issue.

This is a case where another action was filed, statements were made in that action regarding the clout over title.  There's another proceeding in Taiwan that Mr. Strachan mentioned also.

And so this is not a typical case.  This is not something, as Mr. Melton referenced, you know, that's raised in every type of case, you know, where standing is raised.  This is a very, you know, specific issue that I think Your Honor should consider before the case is allowed to proceed under the Court's OGP for jurisdictional discovery.

MR. MELTON:  Your Honor, I disagree.  I think it's a summary judgment issue.

THE COURT:  I understand how you feel about this.

Is there anything anyone else would like to add?

Okay.  Going once, going twice.  Okay.

I'll be back in a couple seconds.

(Pause in proceedings.)

THE COURT:  Okay.  Couple things.  First, on the first issue I'm not going to -- I think it's should I continue the stay?  And I'm not going to continue the stay.

With regard to Mr. Downing's request for discovery, I'm going to allow discovery but I'm going to deny the motion to stay while everything's pending on appeal and allow the case to move forward.

As Mr. Melton suggested, you all can get together and figure out what the discovery schedule will be.  If for some reason you can't work all that out, as much as I've enjoyed being with you, I know that Judge Gilliland, his favorite thing to do in the world is sit down with lawyers -- actually be with lawyers and work out schedules.

When he and I had a case together he did

34

a great job at that.  And he enjoyed it so very much. And y'all are much better lawyers than we were, so he'll enjoy it all that much more.

But obviously I will allow Mr. Downing's request for discovery on -- let me frame it a different way.  However it works out, y'all work out the schedule.  I'll consider the discovery with respect to the ownership to be just part of the discovery that you all need to take.

Now, if that has some impact on, for example, whatever is in the ordinary order about the amount of discovery that can be taken or who it can be taken of, you all should maybe take that into consideration as you're negotiating back and forth. Because I'll make it clear now, I'm going to allow that discovery.  And if that requires extra stuff, whatever that might be, I'm authorizing that now.

And so -- and -- but -- so just because, Mr. Melton, I just can't help myself.  I'm really not -- I'm really surprised you would wear that tie to a hearing.

But I guess, at any rate, is there anything else that we need to take up?

MR. STRACHAN:  Your Honor, I think it's implicit the way you said it, but I want to make it

35

clear what you are granting, Mr. Downing's request, would apply to all four cases, correct?

THE COURT:  Thank you for that clarification.

Yes.  If it wasn't obvious -- it's like, you know, it's like you're all my kids.  You all get to do that.  Yes.

And so if I -- there's nothing I did today that anyone should feel was limited to one of the -- but I did -- thank you for asking that because it reminded me one other thing.

You know, we do have a few things going on here, which makes me happy.  It's better to be busy. If and when Mr. Melton believes he needs to add a claim and wants to raise that, the way I would prefer for you all to do it is for him to communicate with you all and see who -- whether you can agree to do it or disagree to do it.  You know, for example, if it were to come out tomorrow, obviously, I think it'd be wise for everything to work things out.

But as time goes by, I want Mr. Melton to address with you all whether or not you would oppose leave to amend.  And if you do oppose leave to amend, given the way I've handled this hearing, I want you all to contact very quickly Beth and do whatever you need

to do to give us the background of whatever that you feel is necessary for us to have.

But I don't want this -- I don't want it to be one of those things that gets on my docket and I'm just unaware it's here and you all -- especially you and the defendants are unhappy with me because, you know, I'm not dealing with it.

So if one or more of the defendants disagrees with Mr. Melton that additional claims should be added, if that is something he wants, make sure to let me know and we'll have a hearing pretty quickly.

And so I don't know when y'all asked for this one, but hopefully I got to it pretty quickly after you all asked for it, so -- which has so far been my practice.

MS. AMSTUTZ: You did, Judge. Thank you.

THE COURT: Anything else?

I'm leaving here with someone who looks so much like Santa Claus, which is a compliment, that I kind of hate to part for the day.

MR. STRACHAN: Well, do you want me to close the session by saying, Merry Christmas to all and all a good night?

THE COURT: Frankly, I wish you'd been around when my kids were little and said it to them.

They would have enjoyed that very much.

So if I don't see you all in person between now and Christmas, I do hope you all have a wonderful Christmas or holiday or whatever it is you celebrate.  And if there's anything else I need to help you with, please let me know.

Take care.

(Hearing adjourned.)

UNITED STATES DISTRICT COURT )

WESTERN DISTRICT OF TEXAS      )

          I, Kristie M. Davis, Official Court Reporter for the United States District Court, Western District of Texas, do certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

          I certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

          Certified to by me this 8th day of January 2023.

                              /s/ Kristie M. Davis
                              KRISTIE M. DAVIS
                              Official Court Reporter
                              800 Franklin Avenue
                              Waco, Texas 76701
                              (254) 340-6114
                              kmdaviscsr@yahoo.com