**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| **UNM RAINFOREST INNOVATIONS,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**TP-LINK TECHNOLOGIES CO., LTD., and TP-LINK CORPORATION LIMITED,**<br><br>      **Defendant.** | **Case No. 6:19-CV-00262-ADA**<br><br>**JURY TRIAL DEMANDED**<br><br>███████████<br><br>PUBLIC VERSION |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
TP-LINK CORPORATION LIMITED'S MOTION TO DISMISS UNDER FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

    i.  TP-Link's Connections to the U.S. Market ........................................................ 2

III.  ARGUMENT ....................................................................................................... 4

    i.  This Court Should Reject TP-Link's Argument Under Fed. R. Civ. P. 12(b)(2) Because TP-Link's Activities in Texas Grant the Court Personal Jurisdiction. .............................. 4

        a.  TP-Link Purposefully Directs Activities Towards Texas. ........................................ 4

        b.  TP-Link Knows Its Products Will be Sold in Texas. ................................................ 5

        c.  TP-Link Practices All Four Examples of "Something More" Identified in *Asahi*. ...... 8

        d.  UNM's Claims Arise Out of TP-Link's Activities in Texas. ..................................... 12

        e.  Asserting Personal Jurisdiction Over TP-Link Is Reasonable and Fair. ...................... 12

IV.  CONCLUSION .................................................................................................. 13

i

## TABLE OF AUTHORITIES

Cases

*ACQIS LLC v. Lenovo Grp. Ltd.*,
    572 F. Supp. 3d 291 (W.D. Tex. 2021)..............................................................5, 8, 13

*Am. Pats. LLC v. D-Link Corp.*,
    No. 4:19-CV-764, 2020 WL 3972740 (E.D. Tex. July 14, 2020) ..........................11

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
    480 U.S. 102 (1987).......................................................................................4, 5, 8, 11

*Aten Int'l Co. v. Emine Tech. Co.*,
    261 F.R.D. 112 (E.D. Tex. 2009)...............................................................................6

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
    No. 2:21-CV-00430-JRG-RSP, 2023 WL 1478451 (E.D. Tex. Feb. 2, 2023) ..........1

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
    No. 2:21-CV-430-JRG-RSP, 2022 WL 18584501 (E.D. Tex. Dec. 28, 2022)..........1

*Atlas Global Techs. LLC v. TP-Link Techs. Co.*,
    No. 2:21-cv-00430-JRG-RSP, Dkt. No. 28 (E.D. Tex. May 16, 2022).....................1

*Baylor Univ. v. Vinatge Brand, LLC*,
    No. 6:21-CV-409-ADA, 2022 WL 1506286 (W.D. Tex. May 12, 2022) .................7

*Celgard, LLC v. SK Innovation Co.*,
    792 F.3d 1373 (Fed. Cir. 2015)...................................................................................4

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).....................................................................................................4

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
    No. 5:08-CV-26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) ...............................7

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ......................................................................................4

*Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*,
    No. 4:19-CV-696, 2020 WL 569815 (E.D. Tex. Feb. 5, 2020)................................11

*Match Grp., LLC v. Bumble Trading Inc.*,
    No. W-18-CV-00080-ADA, 2020 WL 1287958 (W.D. Tex. Mar. 18, 2020)...........8

*NCS Multistage v. TCO AS*,
    No. 6:20-CV-00622-ADA, 2021 WL 2187954 (W.D. Tex. May 28, 2021) ........5, 8

*North Am. Philips Corp. v. Am. Vending Sales, Inc.*,
35 F.3d 1576 (Fed. Cir. 1994).............................................................................................6

*Nuance Communs., Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)......................................................................................12, 13

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016)......................................................................................5, 8, 9

*Seagen Inc. v. Daiichi Sankyo Co.*,
546 F. Supp. 3d 515 (E.D. Tex. 2021)...............................................................................5, 12

*Semcon IP Inc. v. TCT Mobile Int'l Ltd.*,
No. 2:18-CV-00194-JRG, 2019 WL 2774362 (E.D. Tex. July 2, 2019)................................13

*Stingray IP Sols., LLC v. TP-Link Techs. Co.*,
No. 2:21-cv-00045-JRG (E.D. Tex.) ...................................................................................3

*In re TP-Link Techs. Co., Ltd.*,
No. 2023-123, 2023 WL 2881314 (Fed. Cir. Apr. 11, 2023) ....................................................1

*In re TP-Link Techs. Co., Ltd.*,
No. 2023-123 (Fed. Cir. Feb. 17, 2023)...................................................................................1

*Ultravision Techs., LLC v. Govision, LLC*,
No. 2:18-CV-00100-JRG-RSP, 2020 WL 896767 (E.D. Tex. Jan. 21, 2020),
*report and recommendation adopted*, No. 2:18-CV-00100-JRG-RSP, 2020
WL 887754 (E.D. Tex. Feb. 24, 2020) ...................................................................................12

Statutes

15 U.S.C. § 1051(a)(3)(C) .....................................................................................................11

Other Authorities

29 C.F.R. § 1910.7 .................................................................................................................9

FED. R. CIV. P. 4(k)(1)(A).......................................................................................................4

Fed. R. Civ. P. 12(b)(2)........................................................................................................1, 4

Plaintiff UNM Rainforest Innovations ("UNM") files this Response in Opposition to Defendant TP-Link Corporation Limited's ("TP-Link Hong Kong") Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction (Dkt. No. 118).

## I.    INTRODUCTION

Defendant's Motion appears to be largely a copy-paste job of the motion TP-Link filed in the *Atlas Global* case, which was subsequently denied. *Compare* Motion *with Atlas Global Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-cv-00430-JRG-RSP, Dkt. No. 28 (E.D. Tex. May 16, 2022). Faced with nearly identical facts and arguments, Judge Payne flatly rejected TP-Link's arguments, finding "defendant's arguments that the exercise of personal jurisdiction would be unreasonable are either rejected or not compelling." *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-CV-430-JRG-RSP, 2022 WL 18584501, at *3 (E.D. Tex. Dec. 28, 2022), *report and recommendation adopted*, No. 2:21-CV-00430-JRG-RSP, 2023 WL 1478451 (E.D. Tex. Feb. 2, 2023). After conducting a *de novo* review, Judge Gilstrap agreed with and adopted the reasoning in Judge Payne's Report and Recommendation. *Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-CV-00430-JRG-RSP, 2023 WL 1478451, at *1 (E.D. Tex. Feb. 2, 2023). TP-Link subsequently sought a writ of mandamus seeking transfer of the case to the Central District of California. *In re TP-Link Techs. Co., Ltd.*, No. 2023-123, Dkt. No. 2 (Fed. Cir. Feb. 17, 2023). The United States Court of Appeals for the Federal Circuit denied the petition. *In re TP-Link Techs. Co., Ltd.*, No. 2023-123, 2023 WL 2881314, at *1–2 (Fed. Cir. Apr. 11, 2023). Once again, this Court should reject TP-Link's arguments.

There are situations where a mom-and-pop shop sells products to a large distributor, and some of the shop's products ultimately end up being sold in an unexpected forum. And then there is TP-Link, who, as the *Atlas* Court found, specifically targets the United States market and configures its products to be sold here. TP-Link's Motion makes it seem almost accidental that the

1

accused products (802.11ac and 802.11ax Wi-Fi routers) are sold in the United States. But TP-Link manufactures products specifically designed and certified for the United States market, █████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

Further, TP-Link specifically configures the accused products to be sold in the United States and Texas. TP-Link products sold here contain English user guides, American power plugs, UL certification for compliance with United States safety standards, and FCC certifications. It is not a coincidence that TP-Link products are sold in Texas; it is part of an intentional plan. TP-Link's attempts to escape this forum should be denied.

## II.   FACTUAL BACKGROUND

### i.   TP-Link's Connections to the U.S. Market

There are three TP-Link entities relevant to this Motion: TP-Link Technologies Co., Ltd. ("TP-Link China"), TP-Link Corporation Limited ("TP-Link Hong Kong"), and TP-Link USA (collectively "TP-Link"). ███████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

TP-Link China designs its products to conform with United States electrical requirements and obtains necessary safety and communications certifications. For instance, prior to providing the accused products to TP-Link USA, TP-Link China and TP-Link Hong Kong both certify that the products comply with all necessary FCC requirements governing usage in the U.S. *See* Ex. A (FCC Certifications). When asked about FCC certification, TP-Link's 30(b)(6) witness testified that ███████████████████████████████████████████████████████████

███████████ Ex. B (████ Depo) at 62:24-63:6.[1] She further testified that ████████

████████████████████████████████████████████ *Id.* at 122:25-

123:8. ███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████ Ex. B (████ Depo) at 44:23-45:4. Those products contain markings indicating

they are FCC-certified. Ex. C (AX1800 Photos). The packaging also contains U.S.-specific power

cords and English user guides. Ex. B (████ Depo) at 51:9-13; Ex. C (AX1800 Photos).

████████████████████████████████████████████████

████████████████████████████████████████ For

example, ████████████████████████████████████

███████████████ *Id.* at 1. █████████████████████

████████████████████████████████ *Id.* at §2.4. Also,

████████████████████████████████████████████████

███████████████████████████ *Id.* at §2.5.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] Counsel for TP-Link has authorized the August 13, 2022 deposition of ████████ taken in *Stingray IP Solutions, LLC v. TP-Link Technologies Co., Ltd. et al.* for use as evidence in this case to the same extent as if the deposition were taken in this case.

██████████████████████████████████████████

## III.    ARGUMENT

### i.    This Court Should Reject TP-Link's Argument Under Fed. R. Civ. P. 12(b)(2) Because TP-Link's Activities in Texas Grant the Court Personal Jurisdiction.

#### a.    TP-Link Purposefully Directs Activities Towards Texas.

A federal district court has personal jurisdiction over a party if the party would be subject to personal jurisdiction in a court of general jurisdiction in the forum state. FED. R. CIV. P. 4(k)(1)(A). When a party is not a resident of the forum state, the exercise of personal jurisdiction must comport with both the state's long-arm statute and the fourteenth amendment to the United States constitution. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). The Texas long-arm statute extends to the limit of federal due process, so the two-part personal jurisdiction test collapses into one question—whether exercising personal jurisdiction comports with federal due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Because this case involves a patent question, Federal Circuit law applies. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

There are two types of personal jurisdiction, general and specific. UNM asserts that TP-Link Hong Kong is subject to specific personal jurisdiction. The Federal Circuit has a three-part test to determine whether there is specific personal jurisdiction over a non-resident defendant: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to the defendant's activities with the forum state; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Celgard*, 792 F.3d at 1377. The Supreme Court's personal jurisdiction jurisprudence has been unsettled since *Asahi*, when the Court deadlocked on whether merely placing a product into the stream of commerce knowing it will be sold in the forum state was sufficient to establish personal jurisdiction, or whether

4

something more was required. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 117 (1987). That issue remains unresolved to this day.[2] *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016) ("The precise requirements of the stream-of-commerce theory remain unsettled."); *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 527 (E.D. Tex. 2021) (describing the split). The Federal Circuit has not taken a position on whether "stream of commerce alone" or "something more" is required. *Polar Electro*, 829 F.3d at 1349-50. Either way, the Court need not resolve the split here because TP-Link Hong Kong's conduct satisfies both tests.

The purposeful shipment of a product through an established distribution channel to ultimately reach a forum state may be sufficient to establish minimum contacts. *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 303–04 (W.D. Tex. 2021). As this Court noted, jurisdiction may be had over a "manufacturer even though subsidiaries imported products into the United States when manufacturer placed products into the stream of commerce with the expectation they would be distributed throughout the United States, including in Texas." *Id.* (citing *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-CV-26, 2009 WL 1025467, at *14 (E.D. Tex. Mar. 26, 2009)).

### b.    TP-Link Knows Its Products Will be Sold in Texas.

In its Motion, TP-Link Hong Kong never denies knowing its products will be sold in Texas. It cannot. ███████████████████████████

---

[2] The Motion cites the *Asahi* plurality's "something more" standard as settled law, even though the issue is unresolved. *See* Motion at 10. Indeed, just recently this Court declined to apply the heightened "something more" standard. *See NCS Multistage v. TCO AS*, No. 6:20-CV-00622-ADA, 2021 WL 2187954, at *4 (W.D. Tex. May 28, 2021) ("[T]he Court will apply Justice Brennan's stream of commerce theory laid out in *Asahi*. 480 U.S. 102 (1987). (stating jurisdiction could be validly exercised over a defendant who places goods into the stream of commerce so long as the defendant could foresee the goods might end up in the forum state).").

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ Ex. E (Sales Invoices).

Even though ██████████████████████████████████████████

██, import records show TP-Link China also ships accused products directly to TP-Link USA

in the United States. Ex. F (Bill of Lading). Further, ██████████████████████████████

███████████████████████ Ex. B (██████ Depo) at 56:5-12.2.[3]

Every accused product TP-Link China and TP-Link Hong Kong supply to TP-Link USA is

subsequently sold in the United States. This is ████████████████████████████

███████████████████████████████████ Ex. D (2021-2023

Agreement) at 1. There can be no argument that TP-Link Hong Kong lacks knowledge of where

TP-Link USA is selling the accused products because ████████████████████████

███████████████████████████████████.

TP-Link Hong Kong is not indifferent towards its products being sold in the United States

and Texas; TP-Link Hong Kong wants its products sold here, and it has ███████████

---

[3] TP-Link may argue the "sales" from TP-Link Hong Kong and TP-Link to TP-Link USA occur in Asia. In *North American Phillips Co.*, the Federal Circuit rejected the argument that goods were deemed "sold" at the location where the goods changed hands. Instead, the court held that the goods were "sold" in Illinois for the purposes of personal jurisdiction because they were ultimately delivered there, even though the buyer took possession outside of Illinois. *See North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994); *Aten Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) ("FOB is a contractual term that shifts the risk of loss from seller to buyer at a particular point in time. The relevant inquiry is whether [the defendant] purposefully directs its products toward the Texas market and not whether it retains legal title to the products in the event of loss." (citations omitted)).

████████████████████ TP-Link China and TP-Link Hong Kong submit documents to the FCC stating that TP-Link products (including the accused products) comply with various FCC requirements. Ex. A (FCC Certifications). The only reason for TP-Link China and TP-Link Hong Kong to certify compliance with FCC requirements is to allow TP-Link products to be sold in the United States. See Ex. B (██████ Depo) at 62:24-63:6 ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (emphasis added)). It is not a coincidence that TP-Link's products are sold in the United States. It is the result of a deliberate plan.[4]

Once the accused products reach the United States, they are sold nationwide, including in Texas. TP-Link Hong Kong has not taken any action to prohibit or restrict TP-Link USA from selling the accused products in Texas. *Baylor Univ. v. Vinatge Brand, LLC*, No. 6:21-CV-409-ADA, 2022 WL 1506286, at *4 (W.D. Tex. May 12, 2022) (holding that the defendant was subject to personal jurisdiction and noting that "[the defendant] took no action to limit its advertisement or selling to the forum state by refusing to sell or ship to Texas customers."); *Icon Health & Fitness, Inc.*, 2009 WL 1025467, at *14 ("[T]his Court presumes that JHT Taiwan knew Texas

---

[4] TP-Link's 30(b)(6) witness played coy on this issue during her deposition. She refused to answer whether TP-Link knows its products are sold in the United States, refused to say whether the Distribution Agreement limited TP-Link USA's sales territory to the United States, refused to say what percentage of TP-Link Hong Kong's sales were made to TP-Link USA, and refused to say whether the United States was an important market for TP-Link Hong Kong. See Ex. B (Zhang Depo) at 123:9-125:5. She was willing to concede that ████████████████████ ████████████████ but still refused to acknowledge that FCC certification was a requirement for sales within the United States. *Id.* at 122:25-123:8; 67:22-68:3. If TP-Link makes the argument that it does not know its products are sold in the United States or Texas, that is textbook willful blindness.

was a termination point of the distribution channel because the North American companies established a connection with Texas retailers."). "This is not a case where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation." *See Polar Electro*, 829 F.3d at 1351. TP-Link Hong Kong sold the accused products to TP-Link USA requiring TP-Link USA to sell those products only in the United States, including Texas. It was entirely foreseeable that the accused products would be sold in Texas. This more than satisfies the stream of commerce test. *ACQIS LLC*, 572 F. Supp. 3d at 303–04; *NCS Multistage*, 2021 WL 2187954, at \*4; *Match Grp., LLC v. Bumble Trading Inc.*, No. W-18-CV-00080-ADA, 2020 WL 1287958, at \*4 (W.D. Tex. Mar. 18, 2020) ("The Court finds that the Badoo defendants are part of an established distribution channel, subjecting each of them to personal jurisdiction. The Badoo defendants have created a 'stream of commerce' on their own, using an 'attenuated chain' of licensing to pass the source code downstream until it lands in the hands of Bumble Trading.").

        **c.**     **TP-Link Practices All Four Examples of "Something More" Identified in *Asahi*.**

*Asahi's* plurality opinion provided four examples of what the justices considered to be "something more" sufficient to establish personal jurisdiction: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *See Asahi*, 480 U.S. at 112. TP-Link has done, and continues to do, all four.

      *First*, TP-Link China and TP-Link Hong Kong design and package the accused products specifically for the United States market. As an example, the accused products sold in the United States contain electrical plugs compatible with United States power outlets. Exhibit C is a series

of photos from an AX1800 Wi- Fi router (an accused product) sold in Texas. As can be seen in the photos, the box contains a United States plug that has been "UL US" certified with the certification number "E342511":



TP-Link China and TP-Link Hong Kong, not TP-Link USA, is associated with applying for this "UL US" certification. Ex. G. Indeed, TP-Link has obtained several other UL US certifications. Ex. H (UL Certifications). UL is a "nationally recognized testing laboratory" by the Occupational Safety and Health Administration and accordingly is able to certify compliance with certain United States product safety standards. *See* 29 C.F.R. § 1910.7. By seeking and obtaining UL certification, TP-Link purposefully intended to comply with United States product safety regulations in order for its products to be sold in the United States.

Further, TP-Link's 30(b)(6) witness ███████████████████████████ ████████████. Ex. B (████ Depo) at 44:23-45:4. This means TP-Link employees knowingly package products with United States power cords, not cords for some other country. *See Polar Electro*., 829 F.3d at 1351 ("It was [Defendant], not [Third Party], who physically fulfilled the orders, packaged the products, and prepared the shipments in Finland. [Defendant] admits as much.").

In addition, TP-Link specifically configures its products for U.S. operation. There are 13 Wi-Fi channels, only 11 of which are permitted in the United States. Channels 12 and 13 are permitted in certain other countries but not in the U.S. Before selling products in the United States, TP-Link certifies to the FCC that the accused products only operate in channels 1–11. See Ex. I (AX3000 Channel Declaration). This means TP-Link sells routers specifically configured to operate in the United States and Texas.

***Second***, TP-Link Hong Kong is involved in advertising the accused products in the United States. TP-Link Hong Kong argues TP-Link USA is "solely" responsible for marketing TP-Link branded products in the United States. Mot. at 2. ████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████ TP-Link also attended the CES 2022 convention to personally advertise its products in the United States. Ex. J (CES Advertisement).

***Third***, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████ Further, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████

***Fourth***, ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████ When customers purchase the accused products, they purchase devices with TP-Link's logo on them. *See Am. Pats. LLC v. D-Link Corp.*, No. 4:19-CV-764, 2020 WL 3972740, at *5 (E.D. Tex. July 14, 2020) (noting that product packaging with the foreign defendant's copyrights shows intent to sell in the United States). This is a formal distribution arrangement in the forum state.

Even the act of registering trademarks is an activity targeted at the forum. In recent years, TP-Link has filed trademark applications for versions of "TP-Link" in the United States. Ex. L (TP-Link Trademark). To obtain a trademark, an applicant must declare the mark is used in commerce. 15 U.S.C. § 1051(a)(3)(C). As demonstrated by the Distribution Agreement, one of the uses in commerce is TP-Link USA selling the accused products.

Thus, even under the "something more" articulation of the stream of commerce standard, TP-Link's conduct goes well beyond what is necessary to establish personal jurisdiction. The *Asahi* plurality distinguishes between "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State" and "an act purposefully directed toward the forum State." *See Asahi*, 480 U.S. at 113. Given the significant evidence of TP-Link's purposeful activities directed toward the United States and Texas, TP-Link cannot argue its products simply happen to be swept into the forum. *See Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, No. 4:19-CV-696, 2020 WL 569815, at *7 (E.D. Tex. Feb. 5, 2020) ("It is undisputed that finished products incorporating [the accused products] frequently are made available for sale in multiple retail locations in Texas. Moreover, [the defendant] appears to have, at the very least, the *intent*

11

that its products be sold in the United States and Texas, even if it does not know or control all of the precise details of those downstream transactions." (emphasis in original)).

### d.      UNM's Claims Arise Out of TP-Link's Activities in Texas.

TP-Link Hong Kong does not raise any new arguments regarding the "arises out of" factor, instead referring back to its arguments regarding minimum contacts. *See* Mot. at 8. These arguments fail for the same reasons set forth above. The products accused of infringement in this case are the same products TP-Link places into the stream of commerce knowing the products will be sold in Texas. *See Ultravision Techs., LLC v. Govision, LLC*, No. 2:18-CV-00100-JRG-RSP, 2020 WL 896767, at *6 (E.D. Tex. Jan. 21, 2020), *report and recommendation adopted*, No. 2:18-CV-00100-JRG-RSP, 2020 WL 887754 (E.D. Tex. Feb. 24, 2020) ("The accused displays that Ultravision focuses on to satisfy the first prong are the same accused displays that Ultravision accuses of infringement. Accordingly, this action 'arises out of or relates to' the Shenzhen AO activities with this forum."); *Seagen*, 546 F. Supp. 3d at 528 (finding this factor was satisfied when the products the defendant placed into the stream of commerce were the products accused of infringement).

### e.      Asserting Personal Jurisdiction Over TP-Link Is Reasonable and Fair.

If the plaintiff establishes the first two prongs of the jurisdictional test, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not reasonable or fair. *Ultravision Techs., LLC*, 2020 WL 896767, at *6. This factor "applies only sparingly" and is limited to "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *See Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

None of TP-Link Hong Kong's arguments are convincing. First, TP-Link Hong Kong

argues it would be severely burdened by having to litigate in Texas, "a venue distant from its home country." *See* Mot. at 10. This argument has no merit. *See Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *4 (E.D. Tex. July 2, 2019) ("TCT International argues that its burden to defend itself in Texas is substantial because it is located in Hong Kong and, thus, it will be required to travel a great distance and defend itself in a foreign legal system which differs significantly from the legal system in Hong Kong. If these factors standing alone were sufficient to deprive U.S. courts of jurisdiction, no holder of a U.S. patent could ever hale a foreign infringer into court." (citations omitted)); *Nuance*, 626 F.3d at 1234 (not unfair when the defendant knew its products would end up in the forum state).

Second (citing venue cases, not jurisdiction cases), TP-Link Hong Kong argues Texas does not have a sufficient interest in litigating this dispute. *See* Mot. at 11. However, "Texas has an interest in discouraging injuries that occur within the state." *ACQIS LLC*, 572 F. Supp. 3d at 304.

TP-Link Hong Kong addresses the remaining three factors in three sentences, none of which demonstrate a "compelling case" for dismissing this action. *See* Mot. at 11. Regarding factors three and four, UNM and the judicial system have an interest in obtaining efficient relief and resolution because UNM has co-pending suits in this forum with respect to the same patent claim against Asus, D-Link, and ZyXEL. Accordingly, "this forum will allow for a single resolution of all outstanding legal and factual issues." *ACQIS LLC*, 572 F. Supp. 3d at 304.

## IV.    CONCLUSION

TP-Link Hong Kong intentionally directs its products to the United States, including Texas. ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ TP-Link Hong Kong modifies the products intended to be sold in the United States so they are FCC-compliant, contain English instructions, and can plugged into United States outlets. These are the actions of a

company that wants its products sold here, not those of an indifferent company whose products just happen to be sold here. TP-Link Hong Kong's Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

DATED:  October 19, 2023

Respectfully submitted,

By:      /s/ *Corey M. Lipschutz*

Michael W. Shore (Texas 18294915)
THE SHORE FIRM
901 Main Street, Suite 3300
Dallas, Texas 75202
Tel: (214) 593-9110
Fax: (214) 593-9111
mshore@shorefirm.com

Brian D. Melton (Texas 24010620)
John P. Lahad (Texas 24068095)
Corey M. Lipschutz (Texas 24099303)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
jlahad@susmangodfrey.com
clipschutz@susmangodfrey.com

Ellie R. Dupler (CA Bar No. 337607)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
edupler@susmangodfrey.com

Charles L. Ainsworth (Texas 00783521)
Robert Christopher Bunt (Texas 00787165)
PARKER, BUNT & AINSWORTH, P.C.
100 East Ferguson, Suite 418
Tyler, Texas 75702
Tel: (903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Mark D. Siegmund (Texas 24117055)
CHERRY JOHNSON SIEGMUND JAMES LLC
400 Austin Avenue, Suite 903
Waco, Texas 76701
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com

*Counsel for Plaintiff*
*UNM Rainforest Innovations*

14

**CERTIFICATE OF SERVICE**

I hereby certify that I served counsel of record on October 19, 2023, with a copy of this document via e-mail.

/s/     *Corey M. Lipschutz*
Corey M. Lipschutz